## A. J. Lennox v. Greenwich Insurance Company, Appellant.

*Insurance—Inaccurate description—Warranty.*

Where the policy provides that "if an application, survey, plan or description of property be referred to in the policy, it shall be a part of this contract and a warranty by the insured," and the description of the building furnished by the agent of the insured and inserted in the policy represents it as a dwelling, when in fact it was not, and the insured accepts and holds the policy without objection, such description of the building is a warranty that it is a dwelling which binds the insured.

*Insurance—Misdescription by insured—Warranty—Burden of proof.*

Where a fair construction of the whole contract of insurance compels the conclusion that the insured is bound for the truth of his statement that the building insured was a dwelling, it is not incumbent on the insurance company, defendant, to prove to the satisfaction of the jury that if the building had been correctly described it would have declined the risk or would have charged a higher rate.

Argued April 25, 1898.   Appeal, No. 157, April T., 1898, by defendant, from judgment of C. P. No. 3, Allegheny Co., Nov. Term, 1892, No. 246, on verdict for plaintiff.   Before RICE, P. J., WICKHAM, REEDER, ORLADY, SMITH and PORTER, JJ.   Reversed.

Assumpsit on fire insurance policy.   Before McCLUNG, J.

At the trial it appeared from the evidence that plaintiff owned a house in Oakdale and that his father lived in Washington, Penna., and a few days before the date of the policy sent an agent named Hughes to Oakdale to see the son about insurance.   Hughes, a life insurance agent, went to Oakdale supposing plaintiff wanted life insurance but upon arrival there found that fire insurance was desired; at plaintiff's request he under-

took to and did place the risk with defendant company upon a
verbal application stating that the building was a dwelling and
defendant issued its policy describing the premises as "a two
story tin roof dwelling." It was alleged and testimony given
tending to show that the building was occupied as a flour and
feed store for sale of hay, grain and mill feed. The building
was totally destroyed and proof of loss made. Defendant de-
clined payment on the ground of alleged misrepresentations as
to the character of the risk and nonoccupancy.

It appears that this case was first tried in September, 1893,
and the trial resulted in a judgment in favor of plaintiff, which
was reversed by the Supreme Court in 165 Pa. 575 ; it was tried
a second time in December, 1895; the trial resulting in a judg-
ment in favor of plaintiff, which was reversed by the Superior
Court in 2 Pa. Superior Ct. 431.

The jury found a verdict for plaintiff subject to the opinion
of the court on a question of law reserved and the court sub-
sequently entered judgment on the verdict.

Other facts appear in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $760. Defendant ap-
pealed.

*Errors assigned* were (1) in not affirming defendant's fifth
point, which point and answer thereto are as follows : " 5. The
description (in the oral application by Hughes) of the building
as a dwelling, was a warranty that the building at that date
was in fact a dwelling ; and if the jury believe from the evi-
dence that the building at said date was in fact a feed store,
there was a breach of warranty, the policy became void, and
the verdict must be for the defendant. *Answer :* Refused, but
reserved." (2) In not affirming defendant's sixth point, which
point and answer thereto are as follows : " 6. Under all the
evidence in this case, the verdict must be for the defendant.
*Answer :* Refused, but reserved." (3) In entering judgment for
the plaintiff upon the question reserved as follows : " Whether
under the terms of the policy a misdescription of the property
by plaintiff's agent as a dwelling, when in fact it was a feed
store, even if made in good faith and simply by mistake, was a
warranty which rendered the policy void whether the misde-
scription was material or immaterial." (4) In not entering judg-

ment upon the said reserved question in favor of defendant non obstante veredicto.

*Wm. Scott,* of *Dalzell, Scott & Gordon,* for appellant.—The insurance of a "dwelling," while it may not imply an engagement or warranty that the property shall always be occupied as a dwelling while the risk continues, does imply an engagement that when used at all it shall only be as a dwelling: Cumberland Val. Mut. Prot. Co. v. Douglas, 58 Pa. 419; Ins. Co. v. Fromm, 100 Pa. 347; Ins. Co. v. Usaw, 112 Pa. 80; Wood v. Ins. Co., 13 Conn. 533; Ins. Co. v. Curry, 13 Bush. (Ky.) 312.

A description of the property insured as a "dwelling house" is a warranty that it is such, and if untrue will avoid the policy: Richards on Insurance, 66; Chase v. Ins. Co., 20 N. Y. 52; Alexander v. Ins. Co., 66 N. Y. 464; Merwin v. Ins. Co., 72 N. Y. 603; Ins. Co. v. Lubelsky, 86 Ala. 530; Blood v. Ins. Co., 66 Mass. 472; Ins. Co. v. Smith, 3 Colo. 422; Parmelee v. Ins. Co., 54 N. Y. 193; Ins. Co. v. Martin, 40 N. J. L. 568.

*W. K. Jennings,* of *Jennings & Wasson,* for appellee.—The question turned on whether the insured had misrepresented any material fact: Ins. Co. v. Lawrence, 35 U. S. 507.

The rule stated in the above case seems to be the one followed by our Supreme Court: Hermany v. Life Assn., 151 Pa. 17; Smith v. Ins. Co., 183 Pa. 504.

This is not a case of first impression because so distinguished a court as the Supreme Judicial Court of Massachusetts has passed upon it in the case of King Brick Mfg. Co. v. Ins. Co., 164 Mass. 291.

OPINION BY RICE, P. J., January 18, 1899:

Upon the oral application of the plaintiff's agent the defendant issued a policy of insurance upon (quoting from the policy) "the following described property while located and contained as described herein, and not elsewhere, to wit: on his two story frame, tin roof dwelling situate on west side of Marion avenue, adjoining property of David A. Comstock, in Oakdale, Allegheny county, Pennsylvania." This description was furnished by the plaintiff's agent. The building was in fact a feed store, and was so used at the date of the policy. The policy contained the following provisions:

" This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof."

" If an application, survey, plan or description of property be referred to in this policy it shall be part of this contract and a warranty by the insured."

" This entire policy . . . . shall be void . . . . if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied, and so remain for ten days."

" This policy is made and accepted subject to the foregoing " (and other) " stipulations and conditions, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto," etc.

The building having been destroyed by fire, suit was brought, and on the trial the jury rendered a verdict in favor of the plaintiff, subject to the opinion of the court on the question of law reserved, namely, " whether under the terms of the policy a misdescription of the property by plaintiff's agent, as a dwelling, when in fact it was a feed store, even if made in good faith and simply by mistake, was a warranty which rendered the policy void whether the misdescription was material or immaterial."

It should be observed, that while the verdict of the jury implied a finding that there was no bad faith on the part of the insured, yet the description of the building furnished to the insurer and incorporated in the policy was his act and not that of the insurer. The latter and its agent knew nothing of the character of the building or its use except what they were informed by the applicant for the policy. Therefore the case is not complicated by any question of waiver or estoppel.

In the second place, it is to be noticed, that the finding of the jury as to the materiality of the misdescription does not control the decision of the legal question under consideration. The learned judge instructed the jury upon this subject as follows : " And the question for you on this matter would be then, assuming that it was a mere mistake, made in good faith, was this a material misrepresentation? Was it a misrepresentation which would, if it had been corrected, have caused the agent of this defendant to have declined the policy, or to have charged a

higher rate? If it was, then the policy is just as void as if it were made a warranty, and you should so find."

The effect of submitting the question to the jury in this manner was to cast on the defendant the burden of proof. The materiality of the misrepresentation was to be established affirmatively, otherwise the clause avoiding the policy for misrepresentation as to "any material fact or circumstance" would not apply. As no evidence was adduced by the defendant to establish the facts which the court made the test of the materiality of the misdescription the jury very naturally found for the plaintiff. No criticism of the instruction is intended. If the description is to be treated as a mere representation its correctness may be conceded. What we are endeavoring to make clear is, that as the question was submitted to the jury the verdict does not necessarily imply an affirmative finding that the misdescription was immaterial, but only a negative finding that the defendant had not proved that if the building had been correctly described the company would not have issued the policy or would have charged a higher rate. If the description was a warranty the defendant was not bound to prove either of these facts in order to make out a defense, and nothing is to be taken against it because it did not offer any evidence from which a jury could find them. Whether certain statements are, or are not, material, is a matter upon which there may be a difference of opinion. Nothing therefore can be more reasonable than that parties entering into a contract of insurance shall determine for themselves what they think to be material. And that determination is conclusive: Anderson v. Fitzgerald, 4 H. L. Cas. 484. In such case the question of the materiality of the statements is removed from the consideration of the court or jury: Ætna Life Ins. Co. v. France, 91 U. S. 510.

Express warranty has been defined to be a statement of a fact or a promise of performance relating to the subject of insurance or to the risk inserted in the policy itself, or by reference expressly made a part of it, which must be literally true or strictly complied with or else the contract is avoided.

A representation is a collateral inducement outside the contract and need be only substantially complied with; that is to say, if it is immaterial in the judgment of the jury, its falsity will not constitute a forfeiture. No particular form of words

is necessary to create a warranty, and it may relate to the past, present or future. Richards on Insurance, 62. To constitute a warranty it must clearly appear from a fair construction of the contract that the insured consented to be bound for the literal truth of the statement of fact or the strict performance of the promise.

Applying these principles, what is the fair and reasonable construction of the contract? Was the description a warranty that the building was a dwelling—a term in the contract—or was it a mere collateral inducement outside the contract which would not avoid the policy unless the defendant proved to the satisfaction of the jury that the difference between the property as described and as it really existed, contributed to the loss, or materially increased the risk? Our attention has not been called to any decision of our Supreme Court distinctly ruling the precise question, but there are dicta which tend to sustain the defendant's contention, at least to this extent, that there is a warranty on the part of the insured that the character of the risk is what he represents, and causes it to be described to be.

In Cumberland Val. Mut. Prot. Co. v. Douglas, 58 Pa. 419, a policy was issued " on the building described in the application which is made part of the policy." The application described the building correctly as a dwelling house, and the question raised by the defense was, whether this amounted to an engagement that it was an occupied dwelling house at the date of the policy and would continue to be occupied as such during the life of the policy. The court, Mr. Justice STRONG delivering the opinion, said: " Here the question is, What was the risk assumed? Was it a dwelling house simply that was insured or a dwelling house occupied? Did the policy bind the assured to any use? We think it did not, further than that when used, it should only be as a dwelling house."

In Somerset Co. Mut. Fire Ins. Co. v. Usaw, 112 Pa. 80, the same language was used in construing a policy in which the building was described as an occupied dwelling house. In Dowling v. Merchants' Ins. Co., 168 Pa. 234, the building insured was built for and used as a boarding house but was erroneously described in the policy as " occupied by the insured as a dwelling only." It was argued there, as here, that a description of

property insured as a dwelling house relates to the character of the risk, and, therefore, constitutes a warranty. The court, without questioning the general principle contended for (and, it is fair to say, without distinctly affirming it), sustained the verdict and judgment upon the ground that under the undisputed facts of the case the company was estopped from invoking it. "The testimony was clear and uncontradicted," said Mr. Justice FELL, "that there was no mistake or deception on the part of the plaintiff, who fully and accurately described the property to the agent as a boarding house, and spoke to him of its capacity and use. It was seen and examined by the agent, and its use, which was apparent, was fully known to him. The misdescription was his act alone, in the face of light and knowledge and was unknown to the insured until after the loss occurred." Under these circumstances it was held, distinguishing the case from Swan v. Watertown Ins. Co., 96 Pa. 37, that the defendant could not be released from its contract because the plaintiff acting in good faith accepted without examination the policy written by its agent. But here we are dealing with a case in which the insured had not only accepted and held the policy containing the erroneous description but actually furnished it. It was made a part of the contract by his act; for, of course, he cannot visit the consequences of his agent's mistake—if mistake it was—upon the defendant. This being so, it is argued with much force, that, without more, it was the duty of the court to declare that the statement that the building was a dwelling was not inserted to identify the building merely but was a stipulation as to the character of the risk, and therefore was a warranty. This position has some support in well considered cases decided by the courts of other states, cited in the plaintiff's brief. Moreover the policy under consideration provided, as we have seen, that any application, survey, plan or description of property referred to in the policy should be a part of the contract and a warranty by the insured. As the learned trial judge construed this clause it applies to a description contained in an oral or written application and excludes one actually written into the policy itself. As we construe the clause it is broad enough to apply to either. In other words the printed clause, like many others in the policy, is so framed as to be adaptable to such written terms of the contract as

might be inserted in the blank spaces of the general form. It was contemplated that a policy might be issued, as is sometimes done, " upon the property described in the application," and in order to preclude all doubt language was adopted in the general form which would make such description a part of the contract and a warranty. But this language is inclusive of such description and not exclusive of one written in the policy. Otherwise we reach the unreasonable conclusion that the insured would be bound for the truth of his statements as to the character, use and occupation of the building contained in an outside paper which was referred to merely, but would not be bound therefor, if, the insurer accepting them as true, they were actually written in the policy, unless the insurer could convince a jury that the fact that the building was a mill, a factory, a warehouse, a liquor saloon, a feed store, or whatever it might be, and not a dwelling, was material to the risk. This construction of the words " referred to " seems to us too narrow. The parties contracted with reference to a building of a particular kind. Their minds never met on the insurance of a building of an entirely different kind. The whole policy relates to, refers to, concerns insurance of a building of the kind which the plaintiff described it to be. In that sense—and we cannot agree that it is an absurd or an unwarranted sense to give the terms—the description was referred to in the policy and was a part of the contract, and not a mere representation which induced the contract. A fair construction of the whole contract compels the conclusion that the insured was bound for the truth of his statement that the building was a dwelling; hence it was not incumbent on the defendant to prove to the satisfaction of a jury that if the building had been correctly described it would have declined the risk or would have charged a higher rate.

A different view of this provision relating to the description was taken in King Brick Mfg. Co. v. Phœnix Ins. Co., 164 Mass. 291, but it is fair to say, that the decision of the case did not necessarily turn upon this point; for the court said that even if the clause were broader and constituted a description of the property a warranty it would be in conflict with the provisions of the statutes of the state of Maine in which the policy was executed and delivered. The case is distinguishable from the present in other particulars also. Granting, however, that the

expressions of opinion upon the point are not, strictly speaking, obiter dicta we nevertheless feel constrained to adhere to the conclusions above reached and intimated by us when this case was here before.

The assignments of error are sustained, the judgment is reversed and judgment is now directed to be entered on the reserved point in favor of the defendant.