Ullman Motor Vehicle Operator License Case.

Argued June 11, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Elmer T. Bolla,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*I. B. Sinclair,* for appellee.

OPINION BY WOODSIDE, J., September 17, 1964:

Roland G. E. Ullman, Jr., pleaded guilty in Chester County to operating a motor vehicle while under the influence of intoxicating liquor and was sentenced to $100 fine. The clerk of the courts, through his deputy, certified the sentence to the Secretary of Revenue who notified Ullman that his operator's license was revoked. Ullman appealed to the Court of Common Pleas of Delaware County where he resided. Judge TOAL granted a supersedeas, allowed the appeal and reversed the order of the Secretary. The Commonwealth appealed.

The court below allowed the appeal without statutory authority and in direct violation of a decision of the Supreme Court, which it ignored because "no appearance was made nor brief filed for appellee and we feel that the situation was not thoroughly canvassed" by that Court, and because "It is time that these cases be examined on a broader basis . . .".

At the hearing, Judge TOAL refused to admit the document offered by the Commonwealth as the certification by the Clerk of Courts of Chester County of the conviction of Ullman. The apparent grounds for the refusal to admit the certificate were that "the seal is so indistinct"; that the Secretary of Revenue did not certify the document offered as the certification of the Clerk of the Courts; and that the signer of the document was not the clerk of courts but his deputy. The only possible purpose of a hearing would have been to determine whether or not Ullman pleaded guilty or was convicted of operating a vehicle while under the influence of intoxicating liquor, but this was never considered or even mentioned. Ullman's petition to the Court of Common Pleas for allowance of the appeal did not deny the conviction, nor did he deny it at the hearing. Indeed, his brief to us starts with: "Appellee pleaded guilty on September 9, 1963 . . . to operating a motor vehicle while under the influence of intoxicating liq-

uor." Hearings are not held for the purpose of determining undisputed facts.

The General Assembly has made it unmistakably clear since 1919 that *all* persons convicted of operating under the influence must be denied the privilege of operating a motor vehicle for at least one year. When the conviction is admitted, no court should zealously seek ways of defeating the will of the legislature which has been so clearly expressed for so long a time. The policy of mandatory revocation has received almost unanimous support from all branches of the government, including the legislatures, administrations, Boards of Pardons and courts, which have been deluged with all manner of schemes conjured up by the convicted in their efforts to retain the valued privilege which they had abused.

Indeed, there probably is nothing in the law relating to motor vehicles that is more firmly established than the policy of withholding the privilege of operating a motor vehicle from one guilty of this offense. Denial of operating privilege for this offense was authorized by the legislature so long ago that the same statute required an operator "when signaled to do so by the driver of any horse . . . [to] stop the motor-vehicle, and, if circumstances require it . . . stop his engine." See §§9 and 13 of the Act of April 27, 1909, P. L. 265. At every regular session of the General Assembly since 1909, there have been changes in the motor vehicle law. The changes made to the penalty for operating while under the influence of intoxicating liquor and denying the privilege to operate after conviction have been made progressively more severe by the legislature. In 1909 there was a maximum penalty of 1 year imprisonment, a maximum fine of $300 and a discretionary 6 months suspension of operating privilege; in 1913, the discretionary suspension was increased to one year (P. L. 672, §§11 and 16); in

1919, the maximum fine was increased to $500 and the denial of operating privilege for one year was made mandatory (P. L. 678, §23), and in 1923 the maximum imprisonment was increased to 3 years, the same as for involuntary manslaughter (P. L. 718, §20).

The present provision relating to operating under the influence of intoxicating liquor is §1037 of The Vehicle Code of April 29, 1959, P. L. 58, 75 P.S. §1037. The clerk of any court of record is required to send a certified copy of the judgment of conviction of any such offense to the Secretary of Revenue within 10 days. See §1209(b) of The Vehicle Code, supra, 75 P.S. §1209(b).

The relevant provision concerning revocation is §616 of the code, 75 P.S. §616, and provides as follows: "(a) Upon receiving a certified record, from the clerk of the court, of proceedings in which a person pleaded guilty, entered a plea of nolo contendere, or was found guilty by a judge or jury, of any of the crimes enumerated in this section, the secretary shall forthwith revoke, for a period of one (1) year from the date of revocation, the operating privilege of any such person, . . .

"(1) Operating a motor vehicle or tractor while under the influence of intoxicating liquor, . . .".

In the instant case, the Secretary of Revenue received the pertinent information on a form furnished by the department, signed and dated by the Deputy Clerk of Courts of Chester County.

There is no possible reason for the court below to have sustained the appeal even if it has jurisdiction, which it does not. Ullman never questioned his conviction. Admitting the conviction, he had no standing to question the mere ministerial act of the Secretary in revoking his operator's license as the code requires. Ullman's counsel suggested at the hearing that the court should permit him to establish that the

plea of guilty was "entered for technical reasons, either poor advice of counsel or because of local circumstances or his work required the license, and he mistakenly thought that he would be able to drive" or that "the Commonwealth was unable to make out the case." This contention deserves no discussion. Neither do the contentions of "triple jeopardy" and unconstitutionality of the statute relating to revocation. See *Commonwealth v. Funk*, 323 Pa. 390, 186 A. 65 (1936); *Levy Motor Vehicle Operator License Case*, 194 Pa. Superior Ct. 390, 392, 393, 169 A. 2d 596 (1961); *Upsey v. Secretary of Revenue*, 193 Pa. Superior Ct. 466, 470, 165 A. 2d 267 (1960).

There is no appeal to the court of common pleas from a revocation of an operator's license. In *Brennan's Case*, 344 Pa. 209, 211, 212, 25 A. 2d 155 (1942), the Supreme Court dealt with this question and stated: "The code does not provide for an appeal in the case of a revocation. . . .

"When we consider the arrangement of the act, the manner in which the different sections are titled, and the purpose of §616, it does not seem to be open to argument that the legislature did not intend to give a right of appeal in the case of a revocation of a license where the action of the secretary is mandatory.

"Brennan had his day in court when he appeared and entered his plea of nolo contendere. The revocation by the secretary was based thereon just as the sentence by the court of quarter sessions followed the plea. The guilt of the operator having been established by his own plea, the secretary was bound by the mandate of the legislature and the Vehicle Code has provided for no appeal from such action."

The common pleas courts have been following the law of the *Brennan* case, as indicated by these opinions: *Commonwealth v. Snell*, 74 York 200 (1960); *Commonwealth v. Mullin*, 56 Schuylkill L. Rec. 17

(1960); *Welebob License,* 40 Luzerne L. Reg. 194 (1948); also see *Fulton v. Gleeson,* 71 Dauph. 76, 12 Pa. D. & C. 2d 109 (1957).

There is a presumption that "when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language." §52(4) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §552(4); *Parisi v. Philadelphia Zoning Board of Adjustment,* 393 Pa. 458, 462, 143 A. 2d 360 (1958); *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 137, 194 A. 2d 199 (1963).

As stated above by the Supreme Court, The Vehicle Code does not provide for an appeal by one whose operator's license has been revoked. Section 620 of The Vehicle Code, supra, 75 P.S. §620, provides: "Any person whose operator's license or learner's permit has been *suspended,* or who has been deprived of the privilege of applying for an operator's license or learner's permit under the provisions of this act, shall have the right to file a petition, within thirty (30) days thereafter, for a hearing in the matter in the court of common pleas . . . Such courts are hereby vested with jurisdiction, . . . to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to *suspension* of operator's license privilege . . . or whether he may be deprived of the privilege of applying for an operator's license or learner's permit by the secretary under the provisions of this act. . . ." (Emphasis supplied)

Not finding any authority to allow an appeal from the order *revoking* a license, the court below concluded that a person who had his license revoked for one year was deprived of the privilege of applying for a license during that period, and therefore was entitled to appeal from the order of revocation. Of course, it

goes without saying (even though the code says it in §621) that an operator's privilege cannot be revoked "for one year," if he can obtain a new license to operate within that period. It is not the card which a driver carries in his pocket but the privilege to operate that is revoked.

A person is subject to (1) having his operator's license *suspended* as provided in §618 of The Vehicle Code, supra, 75 P.S. §618; (2) having it *revoked* as provided in §616 of the Code, supra; (3) being *deprived of the privilege of applying* for an operator's license as provided in §619 of the Code, supra. That these are three different classifications distinguished throughout the Code is further indicated by §604.

The act distinguishes throughout between a suspension and a revocation. The reference in §620, supra, to licenses which have been "suspended" and the omission of reference to licenses which have been "revoked" leaves no doubt of the legislative intent. Here, it was an order *revoking* a license from which an appeal was attempted, not an order suspending the privilege of a person to apply for an operator's license which the secretary is authorized to issue under §619 of the Code. The court below should have quashed the appeal.

Order reversed. The revocation is reinstated and the operator's license of the appellee "shall immediately be surrendered to and retained by the department" as required by The Vehicle Code.

ERVIN and WRIGHT, JJ., concur in the result.