**Commonwealth v. Dehmey**

*John L. Heaton*, for Commonwealth.
*Robert P. Reed*, for appellant.

DOWLING, J., July 17, 1974.—Gertrude S. Dehmey was required to submit to a special operator's examination pursuant to section 608(g) of The Vehicle Code of April 29, 1959, P. L. 58, as amended, 75 PS §608(g), which essentially allows the Secretary of Transportation to order, at his discretion, drivers' examinations to insure the continuing competency of existing licensees. She failed the test and her license was suspended pursuant to section 618(a)(1), 75 PS §618(a)(1). An appeal was later withdrawn upon agreement that she be allowed to take a reexamination. She failed again and then requested permission to operate a dual controlled vehicle under section 618(j), 75 PS §618(j), in order that she could attend a commercial driving school. This request was denied on the grounds that such training would be futile due to her physical condition, said denial being the subject matter of the instant appeal.

The Commonwealth filed a motion to quash and a full hearing was held May 5, 1974.

Appellant bases her right to appeal under article V, sec. 9, of the Pennsylvania Constitution as implemented by section 1710.47 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended 71 PS §1710.47, and as made applicable to the Pennsylvania Department of Transportation by section 1710.51(c), 71 PS §1710.51(c). Appellant also cites Department of Transportation v. Hosek, 3 Comm. Ct. 580 (1971), for the proposition that appeals formerly not permitted under section 620 of The Motor Vehicle

Code, 75 PS §620, are now allowed pursuant to article V, sec. 9, of the Constitution and section 1710.47 of The Vehicle Code.

It is the Commonwealth's position that under the holding of Wilson Motor Vehicle Operator License Case, 218 Pa. Superior Ct. 309 (1971), no appeal lies unless specifically provided for in The Vehicle Code. It takes the position that since section 618(j), 75 PS §618(j), and section 620, 75 PS §620, have no provision allowing appeals in cases of this nature, there can be no appeal. The Commonwealth also contends that section 1710.51 was not intended to include the Department of Transportation and that section 1710.47 does not make the administrative agency law applicable to adjudications of the Bureau of Traffic Safety.

In recognition of the important position of administrative agencies in government, the quasi-judicial functions that many of them perform, and the fact that both property rights and personal rights can be seriously affected by their decisions (Smethport Area School District v. Bowers, 440 Pa. 310 (1970)), the Constitutional Convention of April 23, 1968 adopted the new Judiciary Article (Art. V, sec. 9):

"There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be provided by law; and there shall be such other rights of appeal as may be provided by law."

The Debates of the Constitutional Convention, page 1000-1-01, clearly indicate that it was the intention of the convention to provide "in all cases" for a right to appeal from an administrative agency to a court of record or an appellate court.

Since the constitutional provision was not self-executing, the legislature, on December 2, 1968, passed four statutes to implement it. One such statute was the Act of December 2, 1968, P. L. 1135 (No. 354), sec. 2, effective January 1, 1969, 71 PS §1710.47, upon which the appellant relies. The statute reads:

"Where an Act of Assembly expressly provides that there shall be no appeal from an adjudication of an agency, or that the adjudication of an agency shall be final and conclusive, or shall not be subject to review, or where the applicable acts of assembly are silent on the question of judicial review, any person aggrieved by such an adjudication, who has a direct interest in such adjudication may nevertheless appeal the same in the manner provided by sections 41 through 44 of this act and the applicable rules of civil procedure to the Court of Common Pleas of Dauphin County. Sections 31 through 35 of this act shall apply to all proceedings leading to an adjudication of an agency which may be appealed under this section": section 47 of the Administrative Agency Law, 71 PS §1710.47.

The court in Hosek clearly held that the above section applies to the Department of Transportation:

"Section 47 was made applicable to agencies which by Section 51 [71 PS §1710.51(c)] were otherwise excluded from the provisions of the Administrative Agency Law, thus embracing the Department of Transportation": Department of Transportation v. Hosek, supra, at 583.

On the basis of Commonwealth v. Wilson, supra, the Commonwealth argues that section 1710.47 does not apply to the Department of Transportation. However, the court in Wilson relied on Brennan's case; 344 Pa. 209 (1942), and Ullman Motor Vehicle Operator License Case, 204 Pa. Superior Ct. 145 (1964), for the

proposition that no appeal lies unless specifically provided for in The Vehicle Code. The Commonwealth Court in Hosek questioned the holdings of those two cases which predated article V, sec. 9, of the Pennsylvania Constitution and the legislation implementing it. Furthermore, that part of legislation, like section 620 of The Vehicle Code, 75 PS §620, which restricts the right of appeal from administrative adjudications has been voided by article V, sec. 9 and §47 of the Administrative Agency Law, supra, cf. Williams v. Civil Service Comm., 7 Comm. Ct. 554 (1973); Burly Construction Corp. v. Commonwealth, 4 Comm. Ct. 46 (1971). It is now the law that section 620 provides only the appeal procedure in relevant motor vehicle cases: Commonwealth v. Kready, Jr., 7 Comm. Ct. 448 (1973).

Finally, it should be noted that section 47 of the Administrative Agency Law applies only "to an adjudication of an agency." The factual situation presented to the court in Wilson did not constitute an adjudication. In that case, the question decided was a motorist's ability to appeal the imposition of points under section 619.1 of The Vehicle Code, 75 PS §619.1. The court in Virnelson Motor Vehicle Operator License Case, 212 Pa. Superior Ct. 359 (1968), held that the imposition of points is not a discretionary act but rather is mandated by the statute. In the absence of any discretion, there can be no adjudication for "an exercise of discretion would appear to be the starting point in determining whether an agency's action is an adjudication": Fricchione v. Department of Education, 4 Comm. Ct. 288, at 291 (1972). Since Wilson involved no adjudication, the court could not consider section 47.

Given that section 47 is applicable to the Department of Transportation, the sole question remaining

is whether or not the decision regarding Mrs. Dehmey made by the Chief of the Classified Operator's Division represents an adjudication. Section 2(a) of the Administrative Agency Law defines "adjudication" as:

"(a) 'Adjudication' means any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made."

Section 47 requires that sections 31 through 35 of the Administrative Agency Law apply to all adjudications. Under these facts, the action taken by the Department of Transportation satisfies the requirements of an adjudication.

Having decided that an appeal lies, we now turn to the issue of whether the Court of Common Pleas is limited to reviewing the Secretary's decision for an abuse of discretion or whether the court has the power to hear and determine the matter de novo. The rule supported by both statute and decisional law appears to be that where the Secretary's actions are discretionary rather than mandatory, the Court of Common Pleas has the power to hear the matter de novo.

Section 618 of The Vehicle Code, 75 PS §618, provides in part:

"(a) The secretary *may* suspend the operating privilege of any person, with or without a hearing before the secretary or his representative, upon receiving a record of proceedings, if any, in which such person pleaded guilty, entered a plea of nolo contendere, or was found guilty by a judge or jury, or whenever the secretary finds upon sufficient evidence:

"(1) That such person is incompetent to operate a motor vehicle or tractor, or is afflicted with mental or physical infirmities or disabilities rendering it unsafe for such person to operate a motor vehicle or tractor upon the highways." (Emphasis ours.)

Throughout section 618, the phrase "the secretary *may*" continually reappears. The term "may" is interpreted as vesting discretionary power in the Secretary: Sakala Motor Vehicle Operator License Case, 9 Pa. Superior Ct. 174, 280 A. 2d 596 (1971;. Suspensions under section 618 are appealable to the Courts of Common Pleas under §620. It is well established that the Courts of Common Peas have the power to hold such hearings de novo: Sakala, supra.

The result is otherwise when the Secretary's actions are mandated by the word "shall", and in such cases the court's scope of review is severely restricted: Sakala, supra. An example of this is the case of Virnelson, supra, which interpreted the court's scope of review in view of the enactment of section 619.1(i), which states:

"(i) When any person's record shows an accumulation of eleven (11) points or more, the Secretary *shall* suspend such person's operator's license or learner's permit." (Emphasis ours.)

In defining the court's scope of review in light of the above subsection, the Superior Court stated in Virnelson:

"The Secretary can no longer decide to suspend or not suspend for violations under section 619.1 upon his own independent finding that the violation has been committed. When the Secretary receives a report of a conviction from any magistrate or from any court of record of the Commonwealth, as required under section 1209 of the Vehicle Code, 75 P.S. §1209, he must enter the same on the record of the driver, assign the designated points and, in the three situations listed under section 619.1(b), suspend the license of the operator. If the accumulated points of the operator are eleven or more he must then suspend that person's operator's license as required by sub-section (i) and (k) of section 619.1.

"Since the suspensions under section 619.1 in this and the four companion cases no longer involves secretarial discretion we must reappraise the scope of review on appeal from such suspensions. As noted above, section 620, which was not changed when the point system was instituted, provides every suspended licensee the right of appeal to the common pleas court. That court is then required to 'take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license . . . .' This language has been in the statute for many years and by well established authority has always been construed to permit a full scale, de novo hearing of the case in common pleas court. Commonwealth v. Emerick, 373 Pa. 388, 96 A. 2d 370 (1953); Commonwealth v. Wagner, 364 Pa. 566, 73 A. 2d 676 (1950); Commonwealth v. Funk, 323 Pa. 390, 186 A. 65 (1936).

"The rule of de novo review had a clear purpose: '[T]he hearing de novo in the court below protected defendant against an arbitrary exercise of power on the part of the secretary.' Commonwealth v. Cronin, 336 Pa. 469, 474, 9 A. 2d 408, 411 [125 A.L.R. 1455] (1939). So long as the Secretary had broad discretionary powers to suspend or not suspend as he saw fit, a thorough judicial review was, if not a requirement of due process, at least a proper means of preventing arbitrary or discriminatory suspensions. Commonwealth v. Cronin, supra. Section 619.1 and the amendment to Section 618 (b) (2) have now divested the secretary of his discretion in suspending for the named violations. The necessity for de novo review of discretionary action has therefore been removed. What is now reviewed is action mandated to the secretary. De novo review entails, as the term suggests, full consideration of the case anew. The reviewing body is in

effect substituted for the prior decision maker and redecides the case. The reviewing court may not, however, change the statutory law under which the original decision was made. When the secretary's power was discretionary the secretary as well as the court could consider extenuating circumstances. Under section 619.1, when the secretary's action is mandated neither the secretary nor the court may consider such circumstances for they have no bearing on the mandate.

"Since the legislature did not except suspensions under section 619.1 from the appeal provisions of section 620, the licensee may still appeal to the lower court from the action of the secretary suspending his operator's license. However, in determining 'whether the petitioner is subject to suspension,' the lower court will merely determine whether there has been a compliance with section 619.1": 212 Pa. Superior Ct. 366-68.

From the above it is clear that the Common Pleas Court's scope of review is limited only when the Secretary's actions are mandated, and that the court must hear the matter de novo when such actions remain discretionary with the Secretary. Such procedure is necessary to prevent arbitrary and discriminatory action on the part of the Secretary.

The question next arises as to whether the Secretary's denial of permission to operate a dual control vehicle for the purposes of attending an approved driver's training school is, or is not, a discretionary act. Section 618(j) states, in part:

"When the Secretary suspends the operator's license or learner's permit of any person upon a finding that such person is incompetent or unable to exercise reasonable and ordinary control over a vehicle he *may*, on request of the operator, issue to such operator an

operator's license or learner's permit limited to the operation of a motor vehicle equipped with dual operating control or devices while being accompanied by an instructor of an approved driver training program." (Emphasis ours.)

Again the use of the word "may" indicates that this power is discretionary: Sakala, supra. The court, therefore, treats the matter as a de novo hearing.

At the hearing, testimony was taken from the appellant, a physician called on her behalf, and several persons who had given her the special examinations, as well as from the Chief of the Classified Operators Division of the Bureau of Traffic Safety.

The appellant's problem is a physical one. Her physician testified that she has severe rheumatoid arthritis in both hands with a marked degree of a restriction of motion of malalignment of various joints. The above examiners testified that she had difficulty as far as steering control of a motor vehicle, that she was not able to turn the wheel properly, particularly in a sudden or emergency situation.

The court had an opportunity to observe the lady's hands, particularly when she was asked to pick up a glass of water. It was obvious from seeing the woman that her affliction clearly prevented her from properly holding a glass of water, let alone a steering wheel of a motor vehicle.

Mrs. Katsonis who was the person in the bureau who denied the appellant's request, testified that she took into account the opinion of the persons who had tested her, as well as the medical report, and concluded that since her condition was progressive (and this was testified to by her own physician, Dr. Goodman), driver training would not improve or affect her ability to operate a motor vehicle and hence the request was denied.

It is our considered opinion that no purpose could be served by granting the appellant permission to operate a dual control vehicle and, accordingly, appellant's appeal is dismissed.