923 A.2d 1138

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Bradley G. DUDA, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 2006.

Decided May 31, 2007.

Michael Wayne Streily, Esq., James Robert Gilmore, Esq., Allegheny County District Attorney's Office, for Commonwealth of Pennsylvania.

Leonard J. Berger, Jr., Esq., for Bradley G. Duda.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

### *OPINION*

Justice SAYLOR.

In this direct appeal, we consider the constitutionality of a provision of Pennsylvania's DUI statute that prohibits driving after having consumed enough alcohol to elevate one's blood alcohol concentration to a certain level within two hours after driving.

## I.

On August 21, 2004, at 12:32 a.m., a Pittsburgh police officer was dispatched to the scene of a two-car accident. He arrived at the scene two minutes later and spoke to Appellee, who had been driving one of the vehicles. In doing so, he noted a moderate odor of alcohol about Appellee and observed that his eyes appeared "glassy" and that he had a staggered gait. The officer administered several field sobriety tests which Appellee failed to perform to his satisfaction. Accordingly, Appellee was arrested and transported to police headquarters for breath testing. At 1:33 a.m., approximately one hour after the officer's arrival at the accident scene, Appellee took a breathalyzer test, which revealed a blood-alcohol content (BAC) of 0.081 percent.

Appellee was charged by information with misdemeanor DUI counts under Sections 3802(a)(1) and (a)(2) of the Vehicle Code, which provide:

§ 3802. **Driving under influence of alcohol or controlled substance**

(a) **General impairment.—**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a).[1]

After pleading not guilty, Appellee filed an omnibus pretrial motion, *inter alia*, challenging the constitutionality of

1. Section 3802 was enacted as part of the Act of Sept. 30, 2003, P.L. 120, No. 24, effective Feb. 1, 2004 ("Act 24"). Act 24 repealed and

Section 3802(a)(2) under the Due Process Clause of the United States Constitution, as well as Article I, Section 9 of the Pennsylvania Constitution.[2] The trial court heard argument on the motion, and ultimately issued an order, dated July 5, 2005, finding Section 3802(a)(2) unconstitutional and dismissing the count of the information involving that provision.[3] The Commonwealth filed a timely notice of appeal to this Court, certifying that the trial court's ruling substantially handicapped the prosecution, see Pa.R.A.P. 311(d), and we noted probable jurisdiction. See 42 Pa.C.S. § 722(7). As required by Rule of Appellate Procedure 1925(a), the trial court issued an opinion in support of its July 5th order.

In its opinion, the trial court found Section 3802(a)(2) to be unconstitutionally vague and overbroad. In particular, the court observed that the title of Section 3802 references the conduct of driving while under the influence, but noted that, in contrast, the Commonwealth only need prove a certain BAC level within two hours after driving. Thus, in the court's view, a person of ordinary intelligence would likely be confused as to what conduct was prohibited, because he or she would not know the exact level of alcohol permitted in the blood while in operation of the vehicle. Furthermore, in the court's view, subsection (a)(2) sweeps too broadly as it includes within its proscription the activity of driving with a BAC of less than 0.08 percent so long one's BAC reaches 0.08 percent within two hours after driving, thereby criminalizing activity that would otherwise be lawful.

replaced the prior DUI statute located at Section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731, which, in 1996, was invalidated in part by this Court, as discussed infra.

2. The Fifth and Fourteenth Amendments to the United States Constitution prohibit the government from depriving a person of life, liberty, or property, without due process of law, see U.S. CONST amends. V, XIV, and the Pennsylvania Constitution states that an accused may not "be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." PA CONST. art. I, § 9.

3. In his motion, Appellee also contested the validity of Section 3802 generally in relation to the counts of the information charging him under Section 3802(a)(1). The common pleas court denied relief as to those counts, which are not at issue in this appeal.

## II.

To understand the trial court's reasoning and the parties' present arguments, it is helpful to undertake a brief review of the historical background underlying this case. DUI statutes have existed in Pennsylvania since at least 1909.[4] *See generally Commonwealth v. Ullman*, 204 Pa.Super. 145, 148, 203 A.2d 386, 387 (1964). In 1976, the offense was defined in the newly-enacted Motor Vehicle Code, *see* Act of June 17, 1976, P.L. 162, No. 81, as "driving any vehicle while under the influence of alcohol to a degree which renders the person incapable of safe driving." 75 Pa.C.S. § 3731 (repealed); *see Commonwealth v. DeLeon*, 276 Pa.Super. 36, 40, 419 A.2d 82, 84 (1980). Six years later, the General Assembly added, *inter alia*, subsection (a)(4), proscribing driving "while . . . the amount of alcohol by weight in the blood of the [driver] is 0.10% or greater." 75 Pa.C.S. § 3731(a)(4) (repealed); *see* Act of December 15, 1982, P.L. 1268, No. 289, § 9.

Although this latter provision—known as an "illegal *per se* " law—was subsequently upheld against a due process void-for-vagueness challenge, *see Commonwealth v. Mikulan*, 504 Pa. 244, 256, 470 A.2d 1339, 1345 (1983), litigation ensued concerning the manner and propriety of establishing a 0.10 percent BAC at the time of driving premised upon post-driving chemical testing. The reason is that there is necessarily a delay between an accident and the arrival of police at the scene, or between the moment a vehicle is stopped by the police and the time the driver is subjected to chemical testing for purposes of determining his BAC level. *See generally Commonwealth v. Speights*, 353 Pa.Super. 258, 263–64, 509 A.2d 1263, 1266 (1986); *see also* 75 Pa.C.S. § 1547(c)(1) (pertaining to the admissibility into evidence of breath test results); 67 Pa.Code § 77.24 (pertaining to breath test procedures). During such interval, it is likely that the individual's BAC level will change to some degree. In *Commonwealth v. MacPherson*, 561 Pa. 571, 578 n. 3, 752 A.2d 384, 387 n. 3 (2000), for example, this

---

4. For simplicity of the present discussion, DUI refers to the offense as defined by the Legislature, rather than the status of being under the influence at the time of driving.

Court explained that alcohol, once ingested, is typically absorbed into the bloodstream over a 30–to–90–minute period, and then dissipated from the body gradually. Thus, to support a conviction under subsection (a)(4), the BAC reading obtained from the test was required to be extrapolated, or "related back," to the time of driving. *See Commonwealth v. Gonzalez,* 519 Pa. 116, 125–34, 546 A.2d 26, 30–35 (1988) (discussing the difficulty of relating BAC test results back to the time of driving). Because, however, the police will not generally know when the driver's BAC peaks, expert evidence was, in some instances, required to satisfy the Commonwealth's burden of proof. This, in turn, led to disputes concerning whether or not expert relation-back testimony was always needed to prove the Commonwealth's case, particularly as prosecutions were brought that subsumed evidentiary factors that varied from case to case—such as the time delay between driving and BAC testing, whether the test revealed a BAC substantially or only minimally over 0.10 percent, whether the defendant's driving had been erratic, and whether there was testimony concerning the number of alcoholic drinks that the defendant ingested before driving.

Ultimately, the Superior Court settled on an interpretation of Section 3731(a)(4) whereby the prosecution did not always have to present relation-back evidence to support a conviction under that subsection. The court, for example, held that the result of a breathalyzer test, by itself, could support a conviction under subsection (a)(4), although the jury was free to acquit the defendant if there was other evidence tending to undermine the probative value of the test result, *see Speights,* 353 Pa.Super. at 266, 509 A.2d at 1267; *see also Commonwealth v. Slingerland,* 358 Pa.Super. 531, 536, 518 A.2d 266, 269 (Pa.Super.1986) (affirming a subsection (a)(4) guilty verdict where the Commonwealth introduced the results of a post-driving blood test showing a BAC of 0.13 without any relation-back evidence, and the defendant testified that he had been drinking heavily before driving). Two years later, the Superior Court likewise affirmed a Section 3731(a)(4) conviction absent relation-back testimony because the "totality of the

evidence"—including a BAC level of 0.15 percent 53 minutes after the accident, slurred speech, a staggered walk, and an odor of alcohol about the defendant—was sufficient to support the guilty verdict. *See Commonwealth v. Johnson,* 376 Pa.Super. 121, 128, 545 A.2d 349, 352–53 (1988).[5]

On the other hand, this Court found the evidence insufficient to convict in a matter where a blood test performed one hour after driving revealed a BAC only slightly above 0.10 percent, the defendant had not been driving erratically, and the Commonwealth's expert witness testified that the laboratory equipment used to perform the test had a ten percent margin of error. *See Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992); *see also Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992) (filed the same day as *Jarman,* and similarly finding the evidence insufficient to sustain an (a)(4) conviction where the defendant's BAC level was determined to be slightly above 0.10 percent one hour and fifty minutes after driving, but the Commonwealth's medical expert's testimony was ambiguous as to whether it was at least 0.10 percent when driving).

In *Jarman,* Mr. Justice Cappy, now Chief Justice, joined by former Justice McDermott, filed a dissenting opinion in which he set forth his view of the difficulties involved in the majority's approach:

In the case *sub judice,* the expert called by the Commonwealth testified that alcohol reaches its peak in the bloodstream within 60–90 minutes after consumption; that it was not possible to tell, on the basis of a single blood test, whether the blood alcohol was rising or falling; and that he could not say with clinical certainty what appellant's precise blood alcohol content was at the actual time of driving. However, due to the defendant's Fifth Amendment right not to give evidence against himself, the Commonwealth cannot and should not be able to compel the defendant to relate

5. *See also Commonwealth v. Gamber,* 352 Pa.Super. 36, 506 A.2d 1324 (1986); *Commonwealth v. Boyd,* 373 Pa.Super. 298, 541 A.2d 21 (1988) (*en banc* ); *Commonwealth v. Garofalo,* 386 Pa.Super. 363, 563 A.2d 109 (1989); *Commonwealth v. Zelinski,* 392 Pa.Super. 489, 573 A.2d 569 (1990).

when he drank, how much he drank, and when he consumed his last drink. Without this information, no expert will be able to ascertain whether the defendant's blood alcohol was rising or falling at the time of the blood alcohol test. Thus, if we require the Commonwealth to present expert evidence in a case charged under the statute, we are levying an impossible burden on the Commonwealth to prove its case.

*Jarman*, 529 Pa. at 99–100, 601 A.2d at 1232. Thus, in Justice Cappy's view, the Commonwealth should be deemed to have made out a *prima facie* case of guilt through introduction of the BAC test results performed some time after the defendant ceased driving, but the defendant should also remain free to rebut the prosecution's case by presenting expert evidence tending to show that his BAC was actually below 0.10 percent at the time of driving.[6] Moreover, because *Jarman* and *Modaffare* provided little firm guidance as to when expert relation-back testimony was necessary to sustain an (a)(4) conviction, it seemed probable that litigation over this question would inevitably follow.[7]

The General Assembly, unsatisfied with this state of affairs, *see Commonwealth v. Barud*, 545 Pa. 297, 304 n. 2, 681 A.2d 162, 165 n. 2 (1996), amended the law in late 1992 to add subsection (a)(5), which became Pennsylvania's second "illegal

---

6. In *Modaffare*, Justice Cappy (again joined by Justice McDermott) filed a dissenting statement simply referencing his *Jarman* dissent.

7. As examples of decisions in which trial and appellate tribunals struggled to determine, on a case-by-case basis, whether expert relation-back testimony was required, the Attorney General cites *Commonwealth v. Shade*, 545 Pa. 347, 681 A.2d 710 (1996), *Commonwealth v. Loeper*, 541 Pa. 393, 663 A.2d 669 (1995), *Commonwealth v. Allbeck*, 715 A.2d 1213 (Pa.Super.1998), *Commonwealth v. Montini*, 712 A.2d 761 (Pa.Super.1998), *Commonwealth v. Phillips*, 700 A.2d 1281 (Pa.Super.1997), *Commonwealth v. Stith*, 434 Pa.Super. 501, 644 A.2d 193 (1994), *Commonwealth v. Proctor*, 425 Pa.Super. 527, 625 A.2d 1221 (1993), *Commonwealth v. Kasunic*, 423 Pa.Super. 112, 620 A.2d 525 (1993), *Commonwealth v. Mukina*, 422 Pa.Super. 455, 619 A.2d 766 (1993), and *Commonwealth v. Osborne*, 414 Pa.Super. 124, 606 A.2d 529 (1992). *See* Brief for Attorney General at 11 n. 2. Additionally, the Attorney General argues that, not only courts, but "jurors themselves became confused as drunk driving trials became a battle of competing experts testifying on complex concepts of biochemistry and human metabolism." *Id.* at 11.

*per se* " DUI statute. That provision was designed to simplify DUI prosecutions by eliminating the need for expert relation-back testimony in a class of prosecutions where the police obtain a BAC reading of 0.10 within three hours of the defendant's operation of the vehicle. Thus, post-amendment, the DUI statute provided, in relevant part:

**§ 3731. Driving under influence of alcohol or controlled substance**

**(a) Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:

(1) while under the influence of alcohol to a degree which renders the person incapable of safe driving

\* \* \* \* \*

(4) while the amount of alcohol by weight in the blood of the person is 0.10% or greater; or

(5) if the amount of alcohol by weight in the blood of the person is 0.10% or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is: (i) obtained within three hours after the person drove, operated or was in physical control of the vehicle; or (ii) if the circumstances of the incident prevent collecting the sample within three hours, obtained at a reasonable additional time after the person drove, operated or was in actual physical control of the vehicle.

**(a.1) Defense.**—It shall be a defense to a prosecution under subsection (a)(5) if the person proves by a preponderance of the evidence that the person consumed alcohol after the last instance in which he drove, operated or was in actual physical control of the vehicle, and that the amount of alcohol by weight in his blood would not have exceeded 0.10% at the time of the test but for such consumption.

75 Pa.C.S. § 3731 (repealed).

In *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162 (1996), this Court was called upon to determine whether this new provision, 75 Pa.C.S. § 3731(a)(5), violated the constitutional doctrines of vagueness and overbreadth. In examining

the statute, this Court interpreted (a)(5)'s language to create a presumption that, if the defendant's BAC level up to three hours after driving was at least 0.10, then it was similarly elevated at the time of driving. Because the statute did not offer any mechanism for the accused to rebut such presumption or otherwise demonstrate that his BAC was below the legal limit while behind the wheel (apart from the drinking-after-driving defense of subsection (a.1)), *Barud* determined that the statute was constitutionally infirm in that it did not affirmatively require the Commonwealth to prove beyond a reasonable doubt the sole element of the *per se* offense— namely, that the person had a BAC of at least 0.10% *while actually driving. See Barud,* 545 Pa. at 307, 681 A.2d at 166. Subsequently, the Legislature re-wrote Pennsylvania's DUI law, replacing Section 3731 with the present Section 3802. *See supra* note 1.

## III.

In the case at hand, the trial court relied heavily upon *Barud* in striking down Section 3802(a)(2). In particular, the court quoted a passage from the *Barud* decision in which this Court faulted the former Section 3731(a)(5) for not requiring proof that the defendant exceeded a BAC of 0.10 at the time of driving, thus implicating conduct which had not otherwise been declared unlawful in Pennsylvania. In this respect, *Barud* posited that, if a driver were stopped and detained before his BAC reached the 0.10 legal limit, and testing several hours later revealed a BAC above the legal limit, the defendant would be subject to criminal liability although the Commonwealth never proved that he drove while his BAC exceeded the threshold. Furthermore, *Barud* determined that the addition of Section 3731(a)(5) had created confusion as to precisely what conduct was prohibited, since it would be less than apparent to the ordinary citizen whether the proscribed activity was driving with a BAC above 0.10 percent, or having a rising BAC that may be below that threshold level at the time of driving but meets or exceeds that level at the time of testing. *See Commonwealth v. Duda,* CC No. 200413158

(C.P.Allegheny, Aug. 9, 2005), *slip op.* at 7–8 (quoting *Barud,* 545 Pa. at 305–06, 681 A.2d at 166). Therefore, finding that the "import of the language in Section 3802(a)(2) is no different" from that of the invalidated Section 3731(a)(5), the trial court determined that it must suffer the same fate, stating that, "[s]ince this Section [3802(a)(2) ] seeks to criminalize lawful activity, it, like its predecessor, is unconstitutional for vagueness and overbreadth[.]" *Id.* at 9.

The Commonwealth argues that the trial court erred by concentrating exclusively on the driver's BAC level while driving. In the Commonwealth's view, the General Assembly sought, through enactment of the new DUI statute, to unequivocally shift the focus of the prohibited conduct to the act of driving after drinking excessively, irrespective of the driver's actual BAC level while driving. According to the Commonwealth, this new statutory scheme eliminates the presumptions involved in the statute struck down in *Barud* because the fact-finder is no longer required to draw any inference concerning the defendant's BAC level at the moment of driving; rather, to show that the defendant drank "too much" and then drove in violation of the statute, the prosecution need only demonstrate that the individual's BAC was at least 0.08 percent within a time certain *after* driving. The Commonwealth maintains that the Legislature acted within its authority in specifically prohibiting driving after drinking excessively, as opposed to having a certain BAC level while actually driving, as such proscription targets a public danger that undoubtedly follows from drinking excessively and then driving, particularly as the driver is unable to know with certainty when he will reach his destination due to the possibility of construction, heavy traffic, accidents, or other roadway obstructions. *See* Brief for Appellant at 23. The Commonwealth additionally proffers that the new statute is salutary in that it: (a) eliminates "the battle of the experts in a quest for pinpointing the BAC level" at the moment of driving; and (b) removes the prior statute's "deadly loophole" which made criminal liability depend upon fortuitous circumstances such as whether the driver was able to hurry home

before the alcohol was absorbed into his system, or whether an officer stopped his vehicle and tested him "a little 'too soon'" before his BAC reached the legal threshold. This, in the Commonwealth's view, cures any overbreadth problem that the prior law may have suffered from, and furthermore, makes it sufficiently clear to persons of ordinary intelligence that they must "count their drinks" before driving a car. *See id.* at 12, 23–24. The Attorney General adds that other states have enacted similar laws and courts outside of Pennsylvania have universally found them to be valid. *See* Amicus Brief for Attorney General of Pennsylvania at 40–41.[8]

Appellee counters that Section 3802(a)(2) must be interpreted in line with the trial court's reasoning, namely, as intended to proscribe the conduct of actually driving a motor vehicle with a BAC above the legal threshold. He reasons that any other construction would result in its being constitutionally invalid on the basis that it would create a conclusive presumption concerning the driver's BAC level at the time of driving that a trier of fact would be required to follow. He urges that such a presumption has no rational relationship to the furtherance of any governmental interest and would, moreover, encourage arbitrary and discriminatory enforcement. Also, he states that the Commonwealth's position as delineated above is "squarely at odds" with the reasoning employed by this Court in *Barud*, and, additionally, negates the accused's presumption of innocence and the Commonwealth's burden to prove every element of the crime beyond a reasonable doubt.

## IV.

*Barud's* holding was premised upon its interpretation of the legislative purpose underlying Section 3731(a)(5) in the historical context in which that amendment arose. The Court regarded the central aim of the provision as providing an alternate means to convict an accused predicated on the

8. Although the Attorney General's filing is styled as an amicus brief, his status is effectively that of a party to this appeal, as he is statutorily charged with defending the constitutionality of all enactments passed by the General Assembly. *See City of Phila. v. Commonwealth*, 575 Pa. 542, 570–71 & n. 14, 838 A.2d 566, 583–84 & n. 14 (2003).

conduct criminalized by Section 3731(a) as a whole, that is, driving while under the influence. That this underlying premise animated *Barud's* reasoning and holding is reflected in the following passage from the decision:

> While it is clear that the intent of the amendment was to cure those instances in which a person's BAC barely exceeded the legal limit at the time of testing, the statute fails to provide for any mechanism, as do many other jurisdictions, whereby the accused may either: (1) rebut the state's presumption that their BAC at the time of testing accurately reflected their BAC at the time of driving or (2) produce competent evidence that he or she was below the legal limit at the time of driving (other than consumption after the fact) thereby requiring the Commonwealth to prove beyond a reasonable doubt that the defendant's BAC exceeded the legal limit at the time of driving. As currently enacted, however, the statute does not even require any proof that the person had a BAC above the legal limit at the time of driving, thereby criminalizing conduct which has not been declared criminal by the legislature.

*Barud,* 545 Pa. at 307, 681 A.2d at 166. It is apparent from the above that the Court understood that the General Assembly had no intention of defining as a separate and independent offense the activity of driving after drinking excessively irrespective of one's BAC level at the time of driving.

This understanding of *Barud's* central premise was recognized in *Commonwealth v. McCurdy,* 558 Pa. 65, 73, 735 A.2d 681, 685 (1999), a case in which this Court considered whether the defendant's conviction of DUI under Section 3731(a)(1) was vitiated by the holding in *Barud.* McCurdy's trial took place shortly before *Barud* was announced, and the jury had expressly accepted both subsection (a)(1) and subsection (a)(5) as supportive of the DUI guilty verdict, while rejecting subsection (a)(4) as a basis for conviction. On appeal the Superior Court (now in a post-*Barud* timeframe) treated the verdict as containing two separate convictions—one based on (a)(1) and one based on (a)(5)—and vacated what it deemed to be the (a)(5) conviction, while affirming the judgment of sentence relative to the (a)(1) conviction.

This Court granted discretionary review and affirmed, specifically rejecting McCurdy's argument that the unconstitutionality of the (a)(5) conviction undermined the (a)(1) verdict. In reaching its holding, the *McCurdy* court initially reasoned that subsections (a)(1) and (a)(4) of Section 3731 proscribe a single harm to the Commonwealth—the operation of a vehicle under the influence to a degree that renders an individual incapable of safe driving. "The fact that the offense may be established as a matter of law if the Commonwealth can produce the necessary chemical test does not constitute proof of a different offense, but merely represents an alternate basis for finding culpability." *McCurdy*, 558 Pa. at 73, 735 A.2d at 685–86. With this as a foundation, the Court addressed the issue surrounding the invalidity of subsection (a)(5) by observing:

> Here, the jury specifically found that the Commonwealth established the offense of driving under the influence pursuant to subsection (a)(1). Having established that offense, the unconstitutionality of *an alternate method of proving the offense under subsection (a)(5)* did not undermine the proof supportive of subsection (a)(1).

*Id.* at 74, 735 A.2d at 686 (emphasis added); *see also id.* ("[T]he import of subsection (a)(5) was merely to permit the jury to rest its finding of a driving under the influence violation upon blood alcohol evidence bearing a temporal connection to the offense."). Thus, by confirming that the various provisions of Section 3731(a) were all directed at ameliorating a single harm (i.e., actually driving while under the influence), and that such provisions merely provided alternate means of proving that the defendant engaged in the same prohibited conduct, *McCurdy* reinforced what was already apparent, if perhaps less explicitly so, from the face of the *Barud* opinion itself.

The present matter differs in that Section 3802 is not simply an amendment to an existing DUI law intended to provide an alternate means of conviction for the offense as substantively defined in the pre-amendment time frame, but instead repre-

sents a wholesale re-drafting of the DUI law reflecting a re-definition of the offense. As the Commonwealth correctly points out, *see* Brief for Appellant at 17–19, Section 3802(a) represents a legislative enlargement of the prohibited conduct so that it is now unlawful, not only to drive while under the influence, *see* 75 Pa.C.S. § 3802(a)(1), but also to ingest a substantial amount of alcohol and then operate a motor vehicle before the alcohol is dissipated to below a defined threshold (here, 0.08 percent), regardless of the level of absorption into the bloodstream at the actual moment of driving. That this is so is evident from the plain text of subsection (a)(2), *see generally In re Carroll*, 586 Pa. 624, 636, 896 A.2d 566, 573 (2006) ("When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent."), which defines the offense to include two elements: that the individual drove after drinking alcohol, and that the amount of alcohol ingested *before* driving was enough to cause the individual's BAC level to be at least 0.08 percent and below 0.10 percent within two hours *after* driving.[9] *See* 75 Pa.C.S. § 3802(a)(2). *See generally* Brief for Attorney General at 22 ("The element of the offense is no longer the motorist's blood alcohol content 'while' driving. The blood alcohol content at the time of driving is now irrelevant."). It thus follows that Section 3802(a)(2) should not have been invalidated by application of *Barud's* reasoning.

## V.

■ This does not end our inquiry, however, as we must assess whether Appellee's due process vagueness and over-

9. One could argue that similar elements could have been gleaned from the face of the provision struck down in *Barud*. The difference, as noted, is that the *Barud* court (as confirmed in *McCurdy*) understood Subsection 3731(a)(5) differently, i.e., as *not* defining a new offense with these two elements, but providing an alternate method of proving the pre-existing offense. By contrast, not only does Section 3802(a)(2) appear in the context of a rewritten DUI statute, but remaining portions of Section 3802 define more severe drunk-driving offenses in a similar manner. *See* 75 Pa.C.S. § 3802(b) (defining "DUI-high rate of alcohol" similarly to (a)(2) with the sole difference that the prohibited BAC is at least 0.10 percent but less than 0.16 percent); *id.*, § 3802(c) (similarly defining "DUI-highest rate of alcohol" in terms of a BAC of at least 0.16 percent).

breadth claims are otherwise meritorious. In undertaking this assessment, we bear in mind that every Pennsylvania statute is presumed valid and will not be declared unconstitutional unless the party challenging it carries a "heavy burden of persuasion" to demonstrate that the statute "clearly, palpably, and plainly violates the Constitution." *Harrisburg Sch. Dist. v. Zogby*, 574 Pa. 121, 135, 828 A.2d 1079, 1087 (2003).

## A. Vagueness

The due process void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Commonwealth v. Bullock*, 590 Pa. 480, 488, 913 A.2d 207, 212 (2006) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)); *see Commonwealth v. Mayfield*, 574 Pa. 460, 467, 832 A.2d 418, 422 (2003). Although Appellee's argument concerning the statute's purported vagueness lacks substantial clarity (and, at times, appears to conflate the doctrines of vagueness and overbreadth), his primary contention seems to be that it is unclear when the crime occurs—at the time of drinking, driving, or BAC testing. He distinguishes *Mikulan* by noting that, in that matter, it was evident that the *actus reus* occurred at the time of actually driving while under the influence.

Although the enactment under review does allow for a delay between driving and breath or blood testing, a close examination of the statute's text reveals that the offense occurs when the person drives after drinking a substantial quantity of alcohol. As set forth above, Section 3802(a)(2) states that an individual "may not drive" a car "after imbibing" enough alcohol "such that" he has a BAC level of at least 0.08 percent and less than 0.10 percent within two hours after driving. Hence, as noted, the *actus reus* is the act of driving after drinking a sufficient amount of alcohol, where a sufficient amount of alcohol, for present purposes, is that quantity which will cause the person's BAC level to reach the statutorily

prohibited range within two hours after driving, regardless of the actor's BAC level at the actual time of driving. *See generally City of Fargo v. Stensland,* 492 N.W.2d 591, 594 (N.D.1992) (upholding a similar DUI statute, and observing that "[t]he precise blood-alcohol content at the time of operation or control [of the vehicle] is not an element of the per se offense"). Although the offense is defined by reference to a BAC measurement taken some time after driving, the prohibited conduct is drinking excessively and then driving, a conclusion buttressed by the title of Section 3802, "Driving under the influence of alcohol or controlled substance." *See* 1 Pa.C.S. § 1924 (directing that, although the title is not controlling, it may nonetheless "be considered in the construction" of the statute);[10] *accord State v. Crediford,* 130 Wash.2d 747, 927 P.2d 1129, 1132 (1996) (holding that, in spite of the two-hour rule, the statutorily prohibited conduct is driving after ingesting alcohol).

■ For the reasons set forth at length in *Mikulan,* 504 Pa. at 252–56, 470 A.2d at 1343–45, statutes that prohibit driving after drinking by reference to a threshold BAC level are not unconstitutionally vague. *Accord Fuenning v. Superior Court,* 139 Ariz. 590, 680 P.2d 121, 129 (1983); *Burg v. Municipal Court,* 35 Cal.3d 257, 198 Cal.Rptr. 145, 673 P.2d 732, 739–42 (1983); *Roberts v. State,* 329 So.2d 296, 297 (Fla.1976); *Lester v. State,* 253 Ga. 235, 320 S.E.2d 142, 144 (1984); *State v. Rose,* 312 N.C. 441, 323 S.E.2d 339, 341–42 (1984); *Greaves v. State,* 528 P.2d 805, 807–08 (Utah 1974); *State v. Franco,* 96 Wash.2d 816, 639 P.2d 1320, 1324 (1982). *But cf. State v. Baker,* 720 A.2d 1139, 1148–49 (Del.1998) (following *Barud* and finding a DUI law similar to the one at issue in *Barud* to be unconstitutionally vague). This conclusion of non-vagueness is not altered merely because the Legislature has moved the specific BAC threshold from the moment of driving to any time within a defined interval after

10. Parenthetically, we note that one who drives after drinking enough alcohol to risk a violation of Section 3802(a)(2) inevitably drives under the influence of alcohol; therefore, we see no inconsistency between Section 3802's title and the elements of the (a)(2) offense.

driving.   As the Georgia Supreme Court indicated in *Bohannon v. State*, 269 Ga. 130, 497 S.E.2d 552 (1998):

> The only difference between the two statutes is that under former (a)(4), a person had to gauge when he had consumed a sufficiently large quantity of alcohol so that when he drove he would have the prohibited blood-alcohol level, whereas under subsection (a)(5), a person must judge when he has consumed a sufficiently large quantity of alcohol so that when he is tested within three hours of driving, he would have the prohibited blood-alcohol level.   Under either statute, a person knows the prohibited level and has to assess the effects of alcohol in their system so that they do not reach the prohibited level at some point later in time;   under either statute, a person who "drinks a substantial amount of alcohol . . . is put on notice that he chooses to drive at his own peril."

*Id.* at 555–56 (quoting *Lester*, 320 S.E.2d at 144);   *accord United States v. Skinner*, 973 F.Supp. 975, 980 (W.D.Wash. 1997) ("[T]he two-hour rule, just as the former time-of-driving rule, gives fair notice that, although driving after drinking is not illegal per se, driving becomes illegal after a certain level of consumption;   the fact that people cannot sense exactly what their BAC is at any given moment or will be in two hours does not change this.");   *Sereika v. State*, 114 Nev. 142, 955 P.2d 175, 177 (1998) (rejecting a vagueness challenge to a similar statute, and noting that it was not apparent why anticipating one's blood alcohol level up to two hours after driving would be any more difficult than forecasting such level at the time of driving).

Appellee also submits that the statute is vague because it gives inadequate guidance to a trier of fact.   He suggests that it is unclear whether juries will be permitted consider any proffered expert testimony tending to show that the defendant's BAC was below 0.08 percent at the time of driving, or whether juries will instead be instructed to disregard such testimony, thereby permitting the defendant to be "adjudged guilty of an offense on the basis of anticipated but yet uncommitted criminal conduct."   Brief for Appellee at 33–34.   Ap-

pellee misapprehends the nature of the offense. As explained above, the criminal conduct is not continuing to drive until one's BAC reaches between 0.08 and 0.10 percent, but driving after drinking enough alcohol to cause one's BAC to reach that level within the specified time after driving. While a defense expert may be able to cast doubt on the accuracy of the Commonwealth's test results as of the time the test was administered, any proofs tending to extrapolate the defendant's BAC to the time of driving would be irrelevant.[11]

## B. Overbreadth

Appellee also argues that the statute is "irrational and arbitrary" because it criminalizes some conduct that is not harmful to the public (namely, drinking and driving where the driver's BAC is below 0.08 but rising) while failing to criminalize other conduct that is harmful (namely, drinking and driving where the driver's BAC is at least 0.08 but falls below that level by the time the chemical test is administered). *See* Brief for Appellee at 25–27. Although he fails to identify any specific legal precedent or theory in support of such argument, to the extent we can understand Appellee's position he appears to be contending that the statute is overbroad in that it is not rationally related to the state's interest in curtailing the harm caused by intoxicated drivers.[12]

11. Appellee does not argue that the statute lends itself to arbitrary and/or discriminatory enforcement for purposes of the vagueness doctrine. *See generally Skinner*, 973 F.Supp. at 980–81 (rejecting a claim of potential arbitrary or discriminatory enforcement as to a similar Washington State DUI statute). He does, however, suggest that the statute is "irreconcilably vague when read in conjunction with 75 Pa.C.S. § 1547(f)." Brief for Appellee at 33. Section 1547(f) constitutes an aid in interpreting Sections 1547(a)-(i), as it states that those subsections "shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of alcohol." Appellant does not explain how this undermines the clarity of the proscription contained in Section 3802(a)(2). As Appellee has not sufficiently developed this argument, it is waived. *See Commonwealth v. D'Amato*, 579 Pa. 490, 504, 856 A.2d 806, 814 (2004).

12. At various points in his brief, Appellee mentions the concept of equal protection, but he does not develop his argument by reference to precedent regarding that doctrine.

■ Strictly speaking, unconstitutional overbreadth only pertains relative to First Amendment free speech concerns. *See Bullock,* 590 Pa. at 491, 913 A.2d at 214 (citing *City of Chicago v. Morales,* 527 U.S. 41, 79, 119 S.Ct. 1849, 1870, 144 L.Ed.2d 67 (1999)). However, the term is sometimes used in non-speech cases to mean that the challenged statute either sweeps excessively broadly so as to be beyond the state's legitimate police powers, and/or by criminalizing a significant amount of constitutionally protected activity, *see Commonwealth v. Mayfield,* 574 Pa. 460, 471, 832 A.2d 418, 425 (2003), or is arbitrary and capricious because it leads to the imposition of punishment bearing little relation to any legitimate governmental interest. *See, e.g., Commonwealth v. MacPherson,* 561 Pa. 571, 579, 752 A.2d 384, 388 (2000) (summarizing, in terms of overbreadth, the trial court's basis for invalidating a prior DUI statute); *Commonwealth v. Blystone,* 519 Pa. 450, 473, 549 A.2d 81, 92 (1988) (summarizing, in terms of overbreadth, the defendant's challenge to one of the aggravating circumstances enumerated in Pennsylvania's death penalty statute). We phrase Appellee's claim as an overbreadth theory here because the present matter essentially functions as a companion case to *Barud,* which also discussed the constitutional issues raised by reference to due process vagueness and overbreadth. *See Barud,* 545 Pa. at 301, 681 A.2d at 163–64.

■ As applied to the present matter, it is beyond dispute that the state has a valid interest in curbing alcohol-related roadway accidents. *See generally Commonwealth v. Beaman,* 583 Pa. 636, 644, 880 A.2d 578, 583 (2005); *Mikulan,* 504 Pa. at 248–49, 470 A.2d at 1341. Furthermore, there is no constitutional right to drink and then drive while the alcohol is still in one's system. As stated in *Mikulan,*

> there is no constitutional, statutory or common law right to the consumption of *any* quantity of alcohol before driving and there is little doubt that the legislature could, if it so chooses, prohibit driving within a certain reasonable time after drinking *any* amount of alcohol (so long as the prohibition was rationally related to the legitimate legislative purpose).

*Mikulan*, 504 Pa. at 254, 470 A.2d at 1344 (emphasis in original); *accord Cacavas v. Bowen*, 168 Ariz. 114, 811 P.2d 366, 370 (App.1991) ("Even if we assume that a right to drive is fundamental when one can meet the qualifications set by the legislature, and assume that one of suitable age has a 'right' to drink in a state which licenses and permits the sale of alcoholic beverages, the statute does not affect these rights. It does not prohibit driving. It does not prohibit drinking. It prohibits drinking *and* driving. We know of no constitutional right to drink *and* drive[.]" (emphasis in original)). Thus, the only remaining question is whether the statute's two-hour rule is rationally related to a valid legislative purpose.

As Appellee concedes, *see* Brief for Appellee at 26, in evaluating this question, we employ the rational basis test, under which a statutory classification will be upheld so long as it bears a reasonable relationship to accomplishing a legitimate state purpose. *See Harrisburg Sch. Dist. v. Zogby*, 574 Pa. 121, 136, 828 A.2d 1079, 1088 (2003). In undertaking this analysis, courts are free to hypothesize grounds the Legislature might have had for the classification. *See id.* at 137–38, 828 A.2d at 1089 (citing *Baltimore & Ohio R.R. Co. v. Commonwealth, Dep't of Labor & Indus.*, 461 Pa. 68, 84, 334 A.2d 636, 644 (1975); *Geary v. Retirement Bd. of Allegheny County*, 426 Pa. 254, 259–60, 231 A.2d 743, 746 (1967)). Here, the classification consists of drivers who drank a sufficient amount of alcohol and then drove such that their BAC is in the prohibited range within two hours after driving, versus all other drivers.[13] As Appellee notes, drivers who had a declining BAC above 0.08 percent while driving which dips below that level at the time of testing are not subject to criminal liability under Section 3802(a)(2). Thus, the question becomes whether the Legislature could have had any rational basis for predicating culpability on the individual's BAC as measured within two hours after driving rather than at the time of driving.

13. Drivers with BAC levels higher than the range prohibited by Section 3802(a)(2) are covered by Sections 3802(b) and (c). *See supra* note 9.

In surveying other state appellate courts that have dealt with this question, we find that virtually all have upheld the challenged law. The only exception is the Supreme Court of Delaware, which invalidated a four-hour rule contained in a statute similar to the one this Court declared unconstitutional in *Barud.* *See State v. Baker,* 720 A.2d 1139 (Del.1998). The *Baker* court initially reasoned that the enactment, as written, would allow a conviction even where the individual's BAC level was elevated due to the consumption of alcohol *after* driving, whereas it was evident that the "evil" which the legislature sought to curtail pertained to the dangers of drinking *before* driving. *See id.* at 176–78, 923 A.2d at 1145–46. The court then observed that liability could be imposed upon a driver whose BAC was less than 0.05 percent while driving, but then rose to over 0.10 percent at the time of testing. The court found this to be irreconcilable with the statute's independent prescription that evidence of a BAC below 0.05 while driving constitutes *prima facie* proof of not being under the influence within the meaning of the statute. *See id.* at 180, 923 A.2d at 1147. In the present case, because Section 3802(a)(2) expressly defines the prohibited conduct in terms of driving "after" drinking enough alcohol to reach the prohibited BAC level at the time of testing,[14] and does not include a similar provision concerning *prima facie* evidence of innocence, we are more persuaded by the decisions of other jurisdictions that have upheld DUI laws similar to the one under review. In *Sereika v. State,* 114 Nev. 142, 955 P.2d 175 (1998), for example, the Nevada court explained that

there is at least one conceivable rational basis for the enactment of [Nevada's DUI law containing a similar two-hour rule], completely separable from [a presumption that the defendant's BAC at the time of driving was the same as at the time of testing]. Traffic safety is clearly an important state interest. Accordingly, the State has a legitimate

14. Section 3802 does not include a drinking-after-driving defense corresponding to the former Section 3731(a.1). As the Commonwealth acknowledges, however, *see* Brief for Appellant at 31, any evidence that the defendant consumed alcohol after operating the vehicle would tend to undermine the prosecution's ability to prove the elements of the 3802(a)(2) offense. *See supra* at 179–80, 923 A.2d at 1147.

interest in preventing people from driving after ingesting any substance that will render them incapable of driving safely at any time in the following several hours. When people step behind the wheel of a car, they have no certain knowledge of the time that will be required to reach their destination. Although they may have an idea of the time usually involved, they lack the clairvoyance necessary to forecast delays due to any number of common occurrences. We also conclude that promotion of the rising blood alcohol defense, and the concomitant practice of rushing to one's car immediately after ingesting alcohol so as to get home before the alcohol is fully absorbed, is contrary to good public policy. Because drivers have little control over traffic conditions and delays to which they are subject, the state has a legitimate interest in prohibiting people from driving at the onset of inevitably impending intoxication. We find that [the Nevada DUI statute] is rationally related to this legitimate state interest, and is, therefore, not overbroad with respect to the rising blood alcohol defense.

*Id.* at 180 (citation omitted). The Supreme Court of North Dakota also rejected a contention similar to that forwarded by Appellee, reasoning:

The legislature, in adopting the statutes, apparently seeks to deter persons who consume a substantial amount of alcohol from driving. This may lead to convictions of those who drive, for example, with a blood-alcohol content of .09%. This result, however, is not unreasonable or arbitrary. In enacting the per se offense the legislature considered testimony regarding impairment levels and factors that affect alcohol absorption and reduction rates. The legislature could reasonably conclude that those who drive a vehicle with a blood-alcohol content that is .10% or greater, within two hours after relinquishing control of a vehicle, pose an unreasonable risk to public safety. The statutes are rationally related to removing the risk.

*City of Fargo v. Stensland,* 492 N.W.2d 591, 594–95 (N.D. 1992) (citation and footnote omitted); *accord* Brief for Attorney General at 28 ("The General Assembly has a right to

conclude that ... a motorist who consumes sufficient alcohol to generate a blood alcohol content above the legal limit within two hours after driving ... is a moving time bomb, a danger to others on the highway during the time when that motorist is racing his metabolism home."). We find the reasoning of the Nevada and North Dakota courts persuasive as applied to the present dispute, and conclude that the classification drawn by the Legislature in Section 3802(a)(2) survives rational-basis scrutiny.

## VI.

For the reasons stated, the July 5, 2005, order of the Court of Common Pleas is reversed insofar as it invalidated Section 3802(a)(2) of the Vehicle Code, and the matter is remanded for further proceedings consistent with this Opinion.

Former Justice NEWMAN did not participate in the decision of this case.

Justice EAKIN and BAER and Justice BALDWIN join the opinion.

Justice CASTILLE files a dissenting opinion in which Chief Justice CAPPY joins.

Justice CASTILLE, dissenting.

Today, the Majority upholds as constitutional a DUI statute that is materially identical to the DUI statute that this Court unanimously invalidated in *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996). Because, in my view, our decision in *Barud* controls this case, I respectfully dissent.

In *Barud*, this Court examined the constitutionality of former Section 3731(a)(5) of the Motor Vehicle Code, which provided as follows:

**§ 3731. Driving under influence of alcohol or controlled substance**

**(a) Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:

* * *

(5) if the amount of alcohol by weight in the blood of the person is 0.10% or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is:

(i) obtained within three hours after the person drove, operated or was in actual physical control of the vehicle. . . .

* * *

75 Pa.C.S. § 3731(a)(5) (repealed by Act of Sept. 30, 2003, P.L. 120). Former Section 3731(a.1) further provided as follows:

**(a.1) Defense.**—It shall be a defense to a prosecution under subsection (a)(5) if the person proves by a preponderance of evidence that the person consumed alcohol after the last instance in which he drove, operated or was in actual physical control of the vehicle and that the amount of alcohol by weight in his blood would not have exceeded 0.10% at the time of the test but for such consumption.

75 Pa.C.S. § 3731(a.1) (repealed by Act of Sept. 30, 2003, P.L. 120). This Court invalidated former Section 3731(a)(5) in *Barud* after finding the statute void for vagueness and overbreadth. Specifically, we determined that the statute, *inter alia*, "fail[ed] to provide a reasonable standard by which a person may gauge [his] conduct" and "fail[ed] to require proof that a person's BAC actually exceeded the legal limit at the time of driving." *Barud*, 681 A.2d at 163 (emphasis omitted).

In the case *sub judice*, we are asked to determine the constitutionality of Section 3802(a)(2) of the Motor Vehicle Code, adopted in obvious response to *Barud*, which provides as follows:

§ 3802. **Driving under influence of alcohol or controlled substance**

(a) **General impairment.**—

* * *

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a). As appellee aptly notes, Section 3802(a)(2) differs from former Section 3731(a)(5) in only three respects, none of which is relevant to the constitutionality of either statute: (1) the prescribed limit is now 0.08% instead of 0.10%; (2) the person's urine may no longer be used to measure his BAC; and (3) the time period within which the BAC must be tested is now two hours instead of three.

Nevertheless, the Majority, without purporting to overrule *Barud*, determines that Section 3802(a) passes constitutional muster. In the Majority's view, Section 3802(a) "represents a legislative enlargement of the prohibited conduct so that it is now unlawful, not only to drive while under the influence, but also to ingest a substantial amount of alcohol and then operate a motor vehicle before the alcohol is dissipated to below a defined threshold." Majority Slip Op. at 15 (internal citation omitted). Unlike former Section 3731(a)(5), the Majority posits, Section 3802(a)(2) requires two elements: (1) "that the individual drove after drinking alcohol"; and (2) "that the amount of alcohol ingested *before* driving was enough to cause the individual's BAC level to be at least 0.08 percent and below 0.10 percent within two hours *after* driving." *Id.* The Majority concedes in a footnote that "similar elements could have been gleaned from the face of the provision struck down in *Barud*." *Id.* at n. 9. Nevertheless, the *Barud* Court, we are told, "understood [former S]ection 3731(a)(5) differently, i.e., as *not* defining a new offense with these two elements, but providing an alternate method of proving the pre-existing offense." *Id.* Therefore, the Majority concludes that, because Section 3802(a)(5) has redefined the offense so as to include these two elements and thereby shifts the focus away from the

individual's actual BAC while driving, the reasoning and holding of *Barud* do not apply here.

Absent the precedent that is *Barud,* the Majority's interpretation of Section 3802(a) might be tenable. However, I cannot reconcile it with *Barud's* interpretation of former Section 3731(a)(5), which I find materially indistinguishable from the statute before us. To begin with, if the General Assembly had intended to redefine the offense so as to prohibit conduct in addition to merely driving under the influence, I suspect that it would have changed the name of the offense to reflect as much. Yet the heading prefixed to Section 3802 remains, like that of its predecessor, "Driving under influence of alcohol or controlled substance." 75 Pa.C.S. § 3802; 75 Pa.C.S. § 3731 (repealed); *see* 1 Pa.C.S. § 1924 (instructing that section headings may be used as an aid to statutory construction). The statute is obviously a legislative attempt to overrule our decision in *Barud.*

More importantly, in my view, when considered in conjunction with former Section 3731(a.1), former Section 3731(a)(5) proscribed the very same conduct as Section 3802(a)(2). Under former Section 3731(a.1), it was an affirmative defense to prove that the individual drank a sufficient amount of alcohol after driving such that his BAC would not have exceeded 0.10% at the time of the test but for such consumption. Instead of providing an affirmative defense, Section 3802(a)(2) establishes as an element that the individual drove "after imbibing" a sufficient amount of alcohol. The prosecution, of course, should have no problem proving this element through the testimony of the arresting police officer so long as the defendant fails to come forward with affirmative evidence of consumption after driving. Thus, the effect of the two statutes is indistinguishable: unless the defendant can somehow affirmatively prove that the fact that his BAC test results exceeded the maximum percentage was due to his consumption after driving, then he may be convicted of the offense. Under either statute, however, a person who drinks (or drinks to .08% excess) only after driving does not have fair notice

that he is committing the offense of "[d]riving under influence of alcohol."

The two statutes are also identically imprecise in their arbitrary attempts to prohibit certain driving after consumption. Under both statutes, the time period within which the BAC test must be administered is longer than the maximum period within which alcohol is fully absorbed and reaches its peak level in the bloodstream. *See Commonwealth v. MacPherson*, 561 Pa. 571, 752 A.2d 384, 387 n. 3 (2000) (noting that absorption takes up to ninety minutes after consumption). Between consumption and absorption, there is a period during which alcohol has no perceivable impairing effect on the body.[1] *Id.* Knowing this, an individual may drink a relatively small amount, experience no discernible change in his skills of coordination or perception, and therefore begin and complete a relatively short drive before his BAC exceeds 0.08%. Without ever having fair notice that he would thereby commit the offense of driving under the influence, the individual could ultimately test above the legal limit up to two hours later and therefore be prosecuted under Section 3802(a)(2).

Accordingly, what we deemed to be "the most glaring deficiency" of former Section 3731(a)(5) in *Barud* is no less true of Section 3802(a)(2) in the case *sub judice:* "the statute completely fails to require any proof that the accused's blood alcohol level actually exceeded the legal limit **at the time of driving.**" *Barud*, 681 A.2d at 166. The statute, like the predecessor enactment it seeks to revive, does not provide drivers with a reasonable standard to gauge what is criminal conduct, and what is not. Therefore, given the presence of the very same concerns that motivated this Court to strike

---

1. The actual rate of absorption varies from person to person (depending upon such factors as height, weight, and metabolism) as well as from time to time (depending upon such factors as what and when the person last ate). *See Commonwealth v. McCurdy*, 558 Pa. 65, 735 A.2d 681, 687 (1999) (Zappala, J., concurring, joined by Nigro, J.) (citing Robert J. Schefter, *Under the Influence of Alcohol Three Hours After Driving: The Constitutionality of the (a)(5) Amendment to Pennsylvania's DUI Statute*, 100 DICK L.REV. 441, 465–66 (1996)).

194

down its predecessor in *Barud,* I would invalidate Section 3802(a)(2).

I would reject this thinly veiled attempt to overrule, by legislation, the constitutionally based decision in *Barud.* With this dissent, I do not minimize the serious problems posed by impaired drivers who take to our highways. As is not infrequently the case, however, the legislative response to the problem here paints with far too broad a brush. Therefore, I respectfully dissent.

Chief Justice CAPPY joins this dissenting opinion.