J-S65041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,     IN THE SUPERIOR COURT OF
PENNSYLVANIA

Appellant

v.

ALEXANDER BENJAMIN ORLOWSKI,

Appellee     No. 393 WDA 2016

Appeal from the Order Entered March 1, 2016
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0002204-2015

BEFORE: LAZARUS, OLSON AND PLATT,* JJ.

DISSENTING MEMORANDUM BY OLSON, J.:     **FILED OCTOBER 24, 2016**

As I believe that the Commonwealth met its burden at the preliminary hearing of establishing a *prima facie* case against Appellee for violations of 75 Pa.C.S.A. §§ 3802(a)(1) and (c), I conclude that the trial court erred in quashing the criminal information charging Appellee with two counts of driving under the influence of alcohol (DUI). Therefore, I must respectfully dissent.

As this Court has stated:

> It is well-settled that the preliminary hearing serves a limited function. The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime. Our scope of review is limited to deciding whether a *prima facie* case was established.... [T]he Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and

*Retired Senior Judge assigned to the Superior Court.

accepted as true, the judge would be warranted in allowing the case to go to the jury. When deciding whether a *prima facie* case was established, we must view the evidence in the light most favorable to the Commonwealth, and we are to consider all reasonable inferences based on that evidence which could support a guilty verdict. The standard clearly does not require that the Commonwealth prove the accused's guilt beyond a reasonable doubt at this stage. Rather, the *prima facie* case merely requires evidence of the existence of each element of the crime charged. The weight and credibility of the evidence is not a factor at this stage.

**Commonwealth v. Landis**, 48 A.3d 432, 445 (Pa. Super. 2015) (*en banc*) (quotations and citations omitted). In applying this standard of review, I believe that the record, when viewed in a light most favorable to the Commonwealth and considering all reasonable inferences from the evidence adduced, supports the conclusion that the Commonwealth presented evidence of the existence of each element of the two DUI crimes charged. At the very least, Appellee's admissions to the state trooper, together with the circumstances surrounding the slide of Appellee's vehicle down the hill, support the conclusion that the Commonwealth established a *prima facie* case of DUI-general impairment.

As the learned Majority notes, the general impairment provision of the DUI statute provides that an individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol that renders that person incapable of safely operating the vehicle. Majority at 6. The DUI-highest rate provision of the DUI statute provides that the individual may not drive, operate or be in

actual control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual's blood alcohol content (BAC) is 0.16% or higher within two hours after operating the vehicle. 75 Pa.C.S.A. § 3802(c). In affirming the trial court's quashal of the criminal information, the Majority concluded that, "the accident [involving Appellee] occurred under adverse weather conditions on a slippery hill, Appellee imbibed a tremendous amount of alcohol immediately after the crash, and the blood draw was administered after he consumed the shots, following his operation of his truck." Majority at 7. Although the record supports these findings, I believe that the learned Majority failed to consider **all** of the evidence presented at the preliminary hearing in a light most favorable to the Commonwealth.

The testimony at the preliminary hearing showed that it was raining and icy on February 1, 2015 when Quade Karas slid off the side of the road and rolled the truck that he was driving. N.T., Preliminary Hearing, 5/11/15 at 4. The accident occurred at approximately 4:25 p.m. *Id.* at 15-16. Mr. Karas broke the window of this truck, crawled out and climbed up an embankment before crawling onto the road. *Id.* at 5. Approximately 15-20 seconds after Mr. Karas crawled onto the road, Appellee, who was driving in the opposite direction, pulled up and stopped. *Id.* at 16. Appellee exited his vehicle as if he were going to go over to Mr. Karas, at which time Appellee's vehicle immediately began to roll down the hill. *Id.* at 6-7. Appellee ran

- 3 -

after his vehicle but was unable to stop it before it crashed into a tree. Appellee then said "hey, I got to go" to which Mr. Karas responded "you got to do what you got to do." *Id.* at 9. At that time, a man in a green car pulled up and stopped. Appellee asked the man in the green car, "Can you take me home? And the man driving said, yes." *Id.* at 10-11. Appellee got in the green car and it drove away up the hill. At approximately 4:45 p.m. (approximately 20 minutes after Mr. Karas' accident), Trooper David J. Demchak of the Pennsylvania State Police arrived at the scene. *Id.* at 21. At that point, Appellee was walking back down the hill and Trooper Demchak went to talk with Appellee. *Id.* at 13. Trooper Demchak asked Appellee to do a field sobriety test at which time Appellee said "just arrest me, you know that I am drunk." *Id.* at 22. Appellee was asked whether he drank anything prior to the crash and he admitted he consumed three beers. *Id.* Appellee also told Trooper Demchak that he drank "18 shots in approximately 15 to 20 minutes after the crash." *Id.* at 23. Appellee said he drank the shots at a bar that he owned approximately one-half mile up the road from the accident site. *Id.* at 24. Trooper Demchak placed Appellee under arrest and took him for a blood draw, which occurred at approximately 5:55 p.m. *Id.* at 22. His BAC level was 0.255%. *Id.*

When considering this evidence in a light most favorable to the Commonwealth and after drawing all reasonable inferences therefrom, I

believe that the Commonwealth met its burden of establishing the elements of the two DUI charges.

Looking at the charge of DUI-general impairment, it is important to note that Section 3802(a)(1) "is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." *Commonwealth v. Zugay*, 745 A.2d 639, 646 (Pa. Super. 2000) (citation omitted). "Along with other types of evidence, BAC evidence may also be used to prove charges under subsection (a)(1)." *Id.* Moreover, an individual may be convicted of DUI-general impairment "despite the fact that the defendant's blood-alcohol level could not be related back to the time of the defendant's driving." *Id.* (citation omitted).

In this case, the testimony obtained at the preliminary hearing established that when Appellee stopped his vehicle at the site of Mr. Karas' accident and got out of his vehicle to go over to Mr. Karas, his vehicle began to roll down the hill, indicating that he failed to put his vehicle in park or activate the parking brake. Appellee also admitted to the consumption of three beers prior to the accident involving his vehicle. A reasonable inference is that Appellee's failure to secure his vehicle resulted from alcohol-related impairment. In a few seconds, his vehicle crashed into a tree, at which time Appellee said, "hey, I got to go." He spoke with the

driver of the first car that happened upon the scene and asked the driver to take him to his home. Again, considering this evidence in a light most favorable to the Commonwealth, one can reasonably infer that Appellee fled the scene to avoid an encounter with the police. Approximately 15 to 20 minutes later, Appellee returned to the accident scene. He then announced to a state trooper that he was drunk and that he drank three beers before the accident and 18 shots in the 15-20 minutes following the accident. Approximately one hour later, Appellee's blood was drawn and his BAC level was 0.255%. These facts clearly support a *prima facie* case of DUI-general impairment. **See Commonwealth v. Segida**, 985 A.2d 871, 880 (Pa. 2009) (defendant's DUI-general impairment conviction upheld where evidence showed defendant admitted to drinking before he lost control of his vehicle and his BAC level was "strikingly high" at 0.326%).

Turning to the charge of DUI-highest rate, again I believe that the evidence adduced at the preliminary hearing was sufficient to support a *prima facie* case. An offense under Section 3802(c) occurs when an individual drives after drinking a sufficient amount of alcohol such that his or her BAC level reaches the prohibited range within two hours. **See Commonwealth v. Duda**, 923 A.2d 1138, 1148 (Pa. 2007). Thus,

> the *actus reus* is the act of driving after drinking a sufficient amount of alcohol, where a sufficient amount of alcohol, for present purposes, is that quantity which will cause the person's BAC level to reach the statutorily prohibited range within two hours after driving, regardless of the actor's BAC level at the actual time of driving.

- 6 -

*Id.* Although drinking after driving may be considered by the finder of fact, there is no "drinking-after-driving defense" which would bar a DUI-highest rate charge. *Id.* at 1151, n.14.

At the preliminary hearing, the evidence established that Appellee admitted to drinking before driving, he had a one-vehicle accident, he admitted to a state trooper that he was drunk within 15-20 minutes of his accident, and his BAC level was 0.255% within two hours of his driving. This evidence alone establishes a *prima facie* case for DUI-highest rate. Again, assuming Appellee's version of events is found to be credible,[1] it should be up to the finder of fact to decide whether Appellee's BAC level was elevated solely because he drank 18 shots after his accident.[2] Whether (and to what

---

[1] I believe that a finder of fact may find Appellee's version of the events not credible. According to Appellee's version, he got into the green car that apparently took him to a bar he owned, which was approximately one-half mile away from the accident site. He then drank 18 shots of alcohol and walked back to the accident site. A finder of fact may choose not to credit Appellee's story. First, within only a 15-20 minute period, Appellee stopped and exited his vehicle at the accident scene, his vehicle drifted down hill and crashed into a tree, he got a ride from a passing motorist, he went to his bar and drank 18 shots, and then he walked approximately one-half mile back to the accident scene. Secondly, Appellee specifically stated to Trooper Demchak that he drank 18 shots (as opposed to some round number), he claimed to have drunk these shots at his own bar (as opposed to another tavern where witnesses could testify as to whether or not he purchased and consumed 18 shots), and he walked back to the scene with no apparent problem after consuming an exorbitant amount of alcohol in just minutes.

[2] At trial, expert testimony could be used to refute Appellee's version of events. Specifically, an expert may be able to establish that, based upon his
*(Footnote Continued Next Page)*

extent) Appellee was impaired at approximately 4:25 p.m. when he got out of his vehicle and it rolled down the hill into a tree, or whether he only later became impaired by 4:45 p.m. when he returned on foot to the accident scene is a matter for the finder of fact.

Since all of the evidence viewed in a light most favorable to the Commonwealth, and all reasonable inferences drawn from said evidence, establishes the elements supporting the two DUI charges, I believe that it was error for the trial court to quash the criminal information.

*(Footnote Continued)* ────────────

BAC level, 1) Appellee drank more than three beers before the accident; and 2) the BAC level detected approximately 90 minutes after the accident did not reflect the full absorption expected from three beers and 18 shots.