J-S30037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SRECKO PESIKAN, | : | |
| | : | No. 2851 EDA 2018 |
| Appellant | | |

Appeal from the Judgment of Sentence Entered July 23, 2018
in the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0008392-2017

BEFORE: PANELLA, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED JULY 1, 2019**

Srecko Pesikan ("Pesikan") appeals from the judgment of sentence[1] imposed after he was convicted of driving under the influence ("DUI") of a controlled substance – schedule 1; possession of marihuana – small amount for personal use;[2] and several other related offenses, which are not relevant to this appeal.[3] We affirm.

_____

[1] Pesikan purports to appeal from the August 31, 2018 Order denying his post-sentence Motion. However, "a direct appeal in a criminal case can only lie from the judgment of sentence." **Commonwealth v. Lawrence**, 99 A.3d 116, 117 n.1 (Pa. Super. 2014).

[2] **See** 75 Pa.C.S.A. § 3802(d)(1)(i); 35 P.S. § 780-113(a)(31)(i).

[3] Pesikan was convicted of 9 other offenses, which either merged for sentencing purposes or for which he did not receive a sentence.

On June 26, 2017, at approximately 9:20 p.m., Shane Remfrey ("Remfrey") was following a vehicle traveling northbound on Route 1 between Bensalem Township and Middletown Township in Bucks County, Pennsylvania. Remfrey observed the vehicle crash into the guardrail. Upon reaching the crash site, Remfrey, who has a medical background, stopped to render assistance. Remfrey observed Pesikan attempting to crawl from the driver's seat, over a female passenger, to the passenger-side window. The driver-side door was wedged against the guardrail. Remfrey also observed that the female passenger was unconscious. As the vehicle caught fire, Pesikan exited the vehicle, while Remfrey woke the female passenger and assisted her in exiting the vehicle. Both Pesikan and the female passenger fled the scene on foot. The police apprehended Pesikan and the female shortly thereafter. Remfrey later identified Pesikan to the police as the driver of the vehicle.

A bench trial was held on May 4, 2018, after which Pesikan was found guilty of the above-mentioned offenses. Pesikan was sentenced, on July 23, 2018, to 60 days to 6 months in jail for his DUI conviction, to be followed by 15 days of probation for his possession of marihuana conviction.

Pesikan filed a Motion for reconsideration of sentence on July 30, 2018. The trial court denied the Motion, after a hearing, on August 31, 2018. Thereafter, Pesikan filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Pesikan raises the following question for our review: "Whether the evidence is sufficient to sustain the verdict?" Brief for Appellant at 4.

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the [] verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the factfinder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quotation marks and citations omitted).

Pesikan does not identify which of the verdicts he is challenging; however, his argument focuses solely on his DUI conviction. Accordingly, we will limit our review to this issue.

Pesikan concedes that the Commonwealth proved that he was intoxicated. *See* Brief for Appellant at 8. However, Pesikan argues that the evidence was insufficient to identify him as the driver of the vehicle; therefore, he should have been acquitted of the DUI charge. *Id.* Specifically, Pesikan contends that the trial court erroneously deemed Remfrey, a witness for the Commonwealth, credible, and discredited the testimony of Griseld Boni ("Boni"), who testified for the defense as the purported driver of the vehicle. *Id.* at 10-11. Pesikan argues that Remfrey arrived on the scene of the

accident approximately 15 seconds after the crash, during which time Boni "may have" exited the vehicle from the driver's side. *Id.* at 11. Because of this, Pesikan asserts, the trial court should have accepted Boni's testimony as credible, insofar as Boni testified that he, and not Pesikan, operated the vehicle at the time of the accident and fled the scene prior to Remfrey's arrival. *Id.* at 10-11.

Pesikan's argument challenges the weight of the evidence, rather than its sufficiency.[4] *See Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 (Pa. Super. 2009) (stating that "[a]n argument that the finder of fact should have credited one witness'[s] testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence.").

In essence, Pesikan asks us to substitute our judgment on matters of witness credibility for that of the trial court. Ascribing weight to the evidence presented at trial is solely within the province of the finder of fact, as the finder of fact is free to believe all, part, or none of the evidence presented and to determine the credibility of the witnesses. *Commonwealth v. Rabold*, 920 A.2d 857, 860-61 (Pa. Super. 2007). "[I]t is well settled that [this] Court

_____

[4] We note that Pesikan's Concise Statement challenged the sufficiency of the evidence by claiming that Boni's exculpatory testimony was wholly unrebutted. *See* Pa.R.A.P. 1925(b) Concise Statement, 10/23/18, at ¶1(b). Pesikan failed to develop any meaningful argument as to this assertion on appeal. Nonetheless, to the extent his argument could be construed as such, we agree with and adopt the sound reasoning of the trial court, as set forth in its Opinion, and conclude that the evidence was sufficient to support Pesikan's convictions. *See* Trial Court Opinion, 6/26/17, at 5-17.

cannot substitute its judgment for that of the trier of fact." *Gibbs*, 981 A.2d at 282. Therefore, we cannot afford Pesikan relief on this basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/19

*See Attached List*
*T. Criste / Furman*
*11/21/18*

Circulated 06/06/2019 04:13 PM

# IN THE COURT OF COMMON PLEAS
# BUCKS COUNTY, PENNSYLVANIA
# CRIMINAL DIVISION

|  |  |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : No. CP-09-CR-0008392-2017 |
|  | : |
|  | : Superior Court Docket No. |
|  | : 2851 EDA 2018 |
| v. | : |
|  | : |
| SRECKO PESIKAN | : |
|  | : |

## OPINION

### PROCEDURAL BACKGROUND

On June 26, 2017, Appellant was charged with one count of Driving Under the Influence of Alcohol or Controlled Substance ("DUI") General Impairment – 1st offense;[1] one count of DUI Controlled Substance Schedule 1 - 1st offense;[2] one count of DUI Controlled Substance Schedule 2 or 3 - 1st offense;[3] one count of DUI Controlled Substance Metabolite – 1st offense;[4] one count of DUI Controlled Substance - Impaired ability – 1st offense;[5] one count of DUI Controlled Substance – Combination Alcohol/Drugs – 1st offense;[6] one count of Accident Involving Damage Attended Vehicle/Property;[7] one count of Marijuana – Small Amount Personal Use;[8] one count of

---

[1] 75 Pa.C.S. § 3802(a)(1)
[2] 75 Pa.C.S. § 3802(d)(1)(i)
[3] 75 Pa.C.S. § 3802(d)(1)(ii)
[4] 75 Pa.C.S. § 3802(d)(1)(iii)
[5] 75 Pa.C.S. § 3802(d)(2)
[6] 75 Pa.C.S. § 3802(d)(3)
[7] 75 Pa.C.S. § 3734(a)
[8] 35 Pa.C.S. § 780-113(a)(31)(i)





DUI Careless Driving;[9] one count of Operating Vehicle Without Required Financial Responsibility;[10] and one count of Possession of Marijuana.[11]

On May 14, 2017, at a bench trial before the undersigned, the charge of Accident Involving Damage to Attended Vehicle or Property was *nolle prossed*, a charge of DUI – Controlled Substance – Schedule 1 – 1st offense was withdrawn, and the charge of Possession of Marijuana was changed and replaced by the charge of Marijuana – Small Amount for Personal Use. Appellant was thereafter found guilty of DUI and one count each of Marijuana –Small Amount for Personal Use, Careless Driving and Operating Vehicle without Required Financial Responsibility. Sentencing was deferred.

On July 23, 2018, Appellant was sentenced on the count of DUI – Controlled Substance – Schedule 1 to a period of incarceration of a minimum of sixty (60) days and a maximum of six (6) months, and he was sentenced to a period of probation of fifteen (15) days on the charge of Marijuana – Small Amount Personal Use, consecutive to the sentence for the count for DUI.

Appellant filed a timely Motion for Reconsideration of Sentence on July 30, 2018, and after argument held on August 31, 2018, this Court denied Appellant's Motion.

On September 27, 2018, Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania from his judgment of sentence.

On October 2, 2018, this Court directed Appellant to file a Statement of Errors Complained of on Appeal, which Appellant complied with by filing his Concise Statement on October 23, 2018.

---

[9] 75 Pa.C.S. § 3714(a)
[10] 75 Pa.C.S. § 1786(f)
[11] 35 Pa.C.S. § 780-113(a)(31)

2

# FACTUAL BACKGROUND

Appellant appeals the judgment of sentence following his conviction for driving under the influence ("DUI").

On appeal, Appellant challenges the sufficiency of the evidence to support the conviction, specifically arguing that the Commonwealth failed to prove that he was the actual driver of the vehicle. Appellant asserts that he attended a party with a female companion. Also in attendance was one Griseld Boni, an apparent casual acquaintance. Although he belatedly denies that he was driving the vehicle, he essentially admits that on that evening, he was an occupant in the vehicle that was involved in the one car accident while his female friend was apparently being transported to her home from the party. The accident occurred on June 26, 2017 at approximately 9:20 p.m. Upon his apprehension a short time after the accident when Appellant was on foot some short distance from the scene of the accident, Appellant was charged with DUI. It was alleged that Appellant was operating his passenger vehicle in the Northbound passing lane of Route 1 in the area of the township dividing line between Bensalem Township and Middletown Townships in Bucks County, PA. In that area, Route 1 is a two lane road in each direction with the North and Southbound lanes separated in the subject area by guardrails. Appellant was alleged to be under the influence of alcohol and possibly of marijuana. His vehicle collided with the center guardrail, causing portions of the guardrail to be propelled into the Southbound lanes. The vehicle remained lodged and wedged against the guardrail at which time a fire ignited in the engine compartment.

At that time, Alex Harel was operating his passenger vehicle in the Southbound lanes of Route 1 when his vehicle came into contact with pieces of the guardrail propelled into the Southbound lanes severely damaging his vehicle which rendered it inoperable. Police were

3

immediately summoned by Harel and possibly other passing motorists. Bensalem and Middletown police officers were on scene within 3 minutes.

## CONCISE STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Appellant's Concise Statement of Matters Complained of on Appeal, which was filed on October 23, 2018, is reproduced *verbatim* below.

1.  The evidence is insufficient to support the verdict in that:

    a. The Commonwealth witnesses did not see the crash and surmised that Appellant was driving the motor vehicle.

    b. The defense offered **unrebutted testimony** that Appellant was not driving the vehicle at the time of the accident.     [Emphasis Added]

    c. The Commonwealth failed to prove Appellant operated his motor vehicle as no one was present when the crash occurred.

    d. The evidence of operation of a motor vehicle was contradicted by both the operator and the Appellant.

    e. The Commonwealth failed to prove beyond a reasonable doubt that Appellant was operating a motor vehicle.

Concise Statement of Matters, 10/23/18.

## DISCUSSION

Appellant asserts one solitary basis for his appeal and that is that the evidence was not sufficient to support his conviction. Specifically, Appellant asserts that the Commonwealth failed to prove that Appellant was the person operating the vehicle at a time when he was impaired due to ingestion of alcohol and he therefore should have been acquitted of the charge of DUI. In this waiver trial, the Court had the responsibility to consider the evidence and determine the facts and apply the law as to the presence of sufficient evidence to convict the Appellant. Commonwealth v. Gooseby-Byrd, 188 A.3d 1186, 1189 (Pa. 2018).

4

Despite Appellant's argument that there was no evidence presented to support the factual finding that he was the operator of the vehicle at that time, there was such an abundance of evidence that Appellant's argument is indeed remarkable. In fact, one could legitimately say there was evidence literally to excess, both direct and circumstantial that Appellant was the operator. The direct evidence included testimony by a motorist, Shane Remphrey, who was following relatively closely behind Appellant's vehicle in the northbound lanes. Remphrey came upon the accident within about fifteen (15) seconds (as estimated by Remphrey) from his hearing the noise coming from the area of the crash apparently caused by Appellant's vehicle striking the guardrail. Remphrey's testimony was entirely consistent with all of the surrounding circumstantial evidence. Not one issue was raised regarding Remphrey's credibility. There was absolutely nothing to impeach, compromise, question or in any way diminish the solidity or reliability of his testimony. This Court found that testimony worthy of our full confidence. He came upon the scene of the accident immediately and his testimony in that regard follows:

Q. Mr. Remphrey, were you driving on June 26, 2017, at approximately 9:22 p.m.?

A. Yes, I was.

Q. Where were you driving?

A. I was heading northbound on Route One.

Q. What happened while you were driving?

A. There was an accident in front of me.

Q. How do you know there was an accident?

A. I heard the crash ahead of me.

Q. How long did it take you to get to that accident?

A. 15 seconds.

Q. What did you see when you arrived at the accident scene?

A. Car sitting against the guardrail on the left side. Driver's side was against it.

Q. Did you stop at that point?

5

A. Yes, I did.

Q. What did you do after you stopped?

A. Got out of my car, went over to the other car to check on them.

Q. Did you call 911?

A. Yes, I did.

Q. Did police respond?

A. Yes, they did. They were two and a half, three minutes later on the scene.

Q. When you said you wanted to check on him, what were you referencing?

A. I was checking on the people in the car. I've had medical training in my career.

Q. How many people were in the vehicle?

A. Two.

Q. Where in the vehicle were they seated?

A. There was a female that was in the passenger side and a male that was on the driver's side crawling out.

Q. How did he crawl out of the vehicle?

A. Through the passenger side door.

Q. Did he leave the vehicle?

A. Yes, he did.

Q. What did you do upon him exiting the vehicle?

A. Told him to stay around. The cops had been called, and I tried to check on the female that was in the car that was unresponsive at the time.

Q. Did you check on her?

A. Yes, I did.

Q. What happened with her?

A. We got her awake to get her out of the vehicle because there was smoke coming from the vehicle.

Q. Did she leave the vehicle?

A. Yes, she did.

Q. Were you able to see where the two people went after exiting the vehicle?

A. Yes, I did. They headed southbound -- northbound into Penndel.

N.T. 5/14/2018, pp. 12-15.

6

Remphrey, who had medical training, stopped to render aid as a Good Samaritan. He has no reason to favor either Appellant or the police. He noticed that there were two occupants still in the vehicle – one male who occupied the driver's seat and a female in the front passenger seat. The male was attempting to crawl over the female to exit the vehicle from the front passenger door. The driver's door apparently was wedged against the guardrail and sustained a considerable level of damages rendering it inoperable. All of which is circumstantially consistent with Remphrey's testimony. Remphrey attempted to render assistance when he noticed that a fire had broken out in the engine compartment. He then directed his attention to the fire which he suppressed with a fire extinguisher that he had in his vehicle.

Appellant and the female occupant were able to exit the vehicle and fled the scene. Based on descriptions of the two individuals given to the responding police officers, the two individuals were apprehended by police within a matter of minutes and were identified by Remphrey on scene as the two occupants of the vehicle in question. Remphrey also confirmed that Appellant was the occupant of the driver's seat at the time within seconds of the occurrence of the accident. There is no question that Remphrey was in an excellent position to render an accurate and immediate identification as he was in close proximity to the pair as he spoke directly to them while attempting to extract the female from the car with the help of the Appellant. He provided the police with a detailed description of both of the individuals he saw in the car and immediately thereafter identified the persons apprehended by the police.

Q.      Did you see either that male or female again?

A.      Once I got called down to ID them at the scene where they apprehended them.

THE COURT:      Would you repeat that, please.

THE WITNESS:      Once the police sent me further down, once they apprehended them, down into Penndel, they sent me down to ID them.

7

BY MR. FURMAN:

Q. Prior to that did you speak with any police officers?

A. At the scene, yes, I did.

Q. Did you relay any of the similar information you're telling His Honor today?

A. Yep. I told them that the cops were called.

MR. CRISTE: Objection. There's no question in front of him.

THE COURT: All right. Objection --just a moment, before I rule on that. Could you repeat the question that you asked.

MR. FURMAN: I asked if he had spoken with police officers prior to that identification, Your Honor.

THE COURT: All right. The objection is overruled. I believe the answer is being responsive to the question. You can go ahead and say what it is that you told the police.

THE WITNESS: I told them -- gave them what I had, the ID of them, and told them which direction they headed.

MR. FURMAN:

Q. And was it after that or before that that they sent you to that second location?

A. It was after. They held us up there for a while.

Q. Did you go to that second location?

A. Yes, I did.

Q. What did you see once you got to that location?

A. There was the lights on them. They had them apprehended. It was a male and female matching the description that I gave them.

Q. Did you have a chance to see that male?

A. Yes, I did.

Q. And was it the same male you had seen exit from the driver's seat?

A. Yes, it was.

Q. And do you see that individual in court today?

A. Yes, I do.

Q. Can you identify him by something he's currently wearing?

A. Wearing a black blazer.

MR. FURMAN: Let the record reflect he's identified the defendant.

THE COURT: Noted.

8

BY MR. FURMAN:

Q.     Had you ever met the defendant prior to that night?

A.     No, I didn't.

Q.     And have you interacted with him since this incident?

A.     No, I haven't.

N.T. 5/14/2018, pp. 15-17.

Six months later, Griseld Boni, who stated that he was in attendance at the same party as Appellant, came forward to claim that he was in fact the driver of the vehicle at the time of the accident. He claims that he left the scene of the accident for convoluted and tortuous reasons and never came forward earlier as he saw no reasons for doing so. Appellant now asserts that none of the Commonwealth witnesses saw the crash; therefore any conclusions that Appellant was the driver is pure speculation. We, of course, disagreed.

## SUFFICIENCY OF THE EVIDENCE

The standard applied in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Commonwealth v. Segida, 985 A.2d 871, 880 (Pa. 2009). In applying that test; on review, the Superior Court does not weigh the evidence and substitute their judgment for the fact-finder. The Commonwealth need not preclude every possibility of innocence in order to satisfy the sufficiency of the evidence test. The facts and circumstances established by the evidence viewed in the light most favorable to the Commonwealth need only sustain its burden of proving every element of the crime beyond a reasonable doubt. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may by means of wholly circumstantial evidence satisfy its

9

burden of proving a defendant's guilt beyond a reasonable doubt. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Commonwealth v. Knox, 50 A.3d 749, 754 (Pa.Super. 2012), *appeal granted on other grounds,*

68 A.3d 323 (Pa. 2013).

Our Supreme Court has stated that the statute "defines the offense to include two elements: that the individual drove after drinking alcohol, and that the amount of alcohol ingested *before* driving was enough to cause the individual's BAC level to be at least 0.08 percent and below 0.10 percent within two hours *after* driving." Commonwealth v. Duda, 923 A.2d 1138, 1147 (Pa. 2007).

Boni testified that he was the driver of the vehicle. We found that testimony to be completely false, unreliable and contrived. We were satisfied that the testimony was invented whole cloth for the purpose of protecting Appellant. Such self-serving testimony has long been rejected in the face of direct and circumstantial evidence. Gooseby-Byrd, 188 A.3d at 1189. We found the following testimony provided by Boni sufficient to satisfy us that we should reject his testimony in its entirety:

> Q.  Now, what did you do and why did you do it after the crash?
>
> A.  I was trying to get help. I start panicking, honestly. I was trying to get help, and I seen the bar across the street. I went over there and then your girlfriend called me. She said I'm going to come pick you up. I said okay. So I waited there.
>
> Q.  And how long did you wait?
>
> A.  About ten minutes. I'm not pretty sure.
>
> ***
>
> Q.  Okay. When did you next see him? And I'm referring to the defendant, Mr. Pesikan, after the crash?

10

A.  After the crash I seen him in the hospital. We went and picked him up.

*** 

Q.  You said you were driving north with the defendant and his girlfriend?

A.  That's not his girlfriend. That was his friend.

N.T. 5/14/2018, pp. 57-58.

Q.  And then when you got out from the crash, where was the defendant sitting in the car?

A.  In the front seat passenger.

Q.  Where was the girl sitting?

A.  In the back.

Q.  Behind the driver's seat or behind the passenger?

A.  She was right in the middle.

Q.  And were you able to leave out of the left side of the car?

A.  I got out the passenger side -- I mean driver's side.

Q.  So you opened the driver's side door and got out?

A.  Yeah, yeah.

Q.  Then did you shut the door?

A.  Yeah.

Q.  How long after the crash did you get out of the car?

A.  I'm not -- it happened too fast. I'm not sure.

Q.  Was it a minute?

A.  Probably.

Q.  So you got in the crash, asked the two people in the car if they were okay, and then you got out?

A.  Absolutely.

Q.  So it took a little bit of time?

A.  Yeah.

Q.  When you got out of the car, did you call 911?

A.  No, I didn't.

Q.  You say you saw a bar. Where was that bar at?

A.  It was across the street. I mean, not street. I mean highway or whatever.

Q.  In front of you, behind you?

11

A. Behind.

Q. On the other side of the street or on the same side as you were on?

A. On the same side that I was on.

Q. And that's where you went to for help?

A. Yeah.

N.T. 5/14/2018, pp. 62-63.

Q. And she got there about ten minutes later, you said?

A. Around there, yeah, most likely.

Q. But how did she know where you were if you don't know the name of the bar?

A. Because I told her I'm at Penndel exit and there's a bar across the street.

Q. And is this bar right on that road before the exit?

A. What do you mean?

Q. You said you were on the road by the Penndel exit. That's what you told her, right?

A. Yes.

Q. So this bar is on that road just before that?

A. No. It's like -- we going north and the bar was like somewhere around here.

Q. So just a little bit further down --

A. Yeah, further down, yeah.

Q. And that's what you told her; it was just right off that road?

A. Yes.

Q. When she picked you up where did she take you?

A. We went to the hospital.

Q. And that's where you picked the defendant up?

A. Yes.

Q. About how much later was that?

A. I'm not pretty sure.

Q. Half hour, an hour?

A. I'm not sure, sir.

Q. Was it a little bit of time or a lot of time?

A. It was a little bit of time.

12

Q.    Were the defendant and the girl still in the car when you left?

A.    I'm not sure if they were in the car or not.

Q.    You don't remember?

A.    I left at the moment.

Q.    When you left were they still in the car?

A.    Yeah, yeah, of course. Yeah, they were in the car.

Q.    Did the defendant tell you anything about him leaving; that he was going to go get help?

A.    No.

Q.    Did the defendant have a cell phone that night?

A.    I wasn't paying attention to the cell phones at the moment.

Q.    Did he have a cell phone?

A.    Yeah, he did have a cell phone.

Q.    Is that how you found out he was at the hospital?

A.    No, his girlfriend talked to the cop.

N.T. 5/14/2018, pp. 66-67.

Q.    When did the defendant tell you he was charged with a criminal offense?

A.    Six months later.

Q.    And when he told you he was charged, did you find that odd?

A.    Yeah.

Q.    Did you ever go to the police station to tell them that, hey, he wasn't the driver, you made a mistake?

A.    No. Because I thought that everything would be okay because they let him go. He got tested in the hospital and they just let him go. And I thought --six months later he got charged. I didn't know that.

Q.    But you said he eventually told you he was charged.

A.    Yeah, six months later, yes.

Q.    But you never bothered to go to the police and tell them, hey, you got the wrong guy?

A.    No.

N.T. 5/14/2018, pp. 68-69.

13

Appellant was apprehended a short distance from the accident stating that another person was driving but he did not know who the driver was. Appellant was clearly under the influence of alcohol and/or drugs. The arresting officer testified in corroboration of Remphrey's testimony as follows:

Q. Did you come into contact with the defendant?
A. Yes, I did.
Q. How did you come into contact with him?
A. I then activated my lights and stopped the subject -- the male and the female on the side of the road.
Q. Did you make any observations of the defendant?
A. Yes.
Q. What observations did you make?
A. He was obviously intoxicated. He had the odor of alcohol on his person, along with unsteady gait and bloodshot eyes.
Q. And where you the only officer that responded to where the defendant was?
A. No.
Q. Who else responded?
A. There was several other officers that responded, along with Middletown Township that assisted with the investigation.

N.T. 5/14/2018, p. 25.

Q. Did you make any observations when you interacted with the defendant?
A. Well, I did start speaking with him. He was very agitated. Had a distinct odor of an alcoholic beverage on his breath when he was speaking to me. Slurred his words and he was very unstable. At one point when I was speaking with him he almost fell over. I had to grab him. I asked him to sit on the guardrail, but he refused to.
Q. Did you speak with the defendant about the crash?
A. I spoke with him -- I asked him where he was coming from. He said he was coming from the crash area. And I asked him if he was driving and he said, no, he was a passenger. And at that time, probably by the time I was asking him those questions, a white female exited the wooded area and came and was standing right next to the guardrail. So while I was speaking to him, he told me that he was in the vehicle and the young

14

lady that he was with was in the vehicle. And I asked him if he was driving the vehicle, and he said, no, there was another friend driving the vehicle that ran in a different direction.

Q. Did you question him as to who that individual was?

A. I did.

Q. What did he say to you, if anything?

A. He didn't know who it was and he didn't know his name.

THE COURT: His name?

THE WITNESS: His name. He didn't know his friend's name, Your Honor, that was driving the vehicle.

THE COURT: Well, that was the female.

THE WITNESS: No. He indicated to me that there were three people in the vehicle.

THE COURT: Oh, there were three people.

THE WITNESS: Yeah. The driver of the vehicle, Your Honor, he told me, fled the scene in a different direction. His friend, who was the female with him, they ran together into the wooded area close to the crash.

BY MR. FURMAN:

Q. Did you ask the defendant if he had the keys to the vehicle?

A. Yes, I did.

N.T. 5/14/2018, pp. 31-33.

The arresting officers testified that, as is their normal practice, they took Appellant to the hospital apparently for a blood draw and possibly for a check-up in that he was involved in a serious accident. They took him to police headquarters for processing. Boni and the female could not have picked up Appellant from the hospital as Appellant was retrieved from the police station. The female could not have picked up Boni from that mythical bar as the car she was in was crashed against the guardrail with the engine on fire and the female and Boni did not know one another. Boni purportedly ran from the burning car with Appellant and the female still inside. The story falls apart in so many ways that it is hard to count the ways. Officer Joseph Schuck testified as follows:

15

Q.     And you performed the processing of the defendant in this case, correct?

A.     I did.

Q.     Was the defendant eventually released from custody?

A.     He was.

Q.     Where was he released from?

A.     From the police station.

Q.     Was he released from the hospital out of custody at any point?

A.     No, he was not released from the hospital.

N.T. 5/14/2018, p. 73.

The assertion that this relative stranger was in fact the driver of the vehicle and that he was driving the car is peppered with so many contradictions, inconsistencies, incongruities as to defy any logical or persuasive analysis. Boni testified that he wanted to do a favor for Appellant in driving Appellant and his girlfriend to girlfriend's home; meanwhile Boni testified that the female was a mere casual friend to Appellant. Nonetheless, Boni drove the car into the guardrail where the car was disabled, on fire and he left Appellant and the female in the car in the middle of a high speed two lane roadway only to later have the female purportedly tracking Boni down at a nearby strip bar. She then picked up Boni and drove him in a phantom vehicle to the hospital to pick up his apparent friend/Appellant. In fact, Appellant was taken by police to the hospital and the police transported Appellant back to police lock-up where he was retrieved by someone. Boni purportedly did not find out that Appellant was charged with DUI until six months later and even then did not inform police that Appellant was not the person operating the vehicle at the time. A review of the testimony is rife with transparent conflicts that leads inexorably to the conclusion that the testimony of Appellant and his witness is patently incredible.

16

The inconsistencies continued unabated throughout the trial and we had no difficulty in rejecting the evidence produced by Appellant. It is not necessary to point out all of the holes in Appellant's story.

A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Commonwealth v. Brotherson, 888 A.2d 901, 904 (Pa.Super. 2005), *appeal denied,* 899 A.2d 1121 (Pa. 2006), *quoting* Commonwealth v. Williams, 871 A.2d 254, 259 (Pa.Super. 2005).

## CONCLUSION

We suggest that Appellant's Appeal be promptly denied.

BY THE COURT:

_____
CLYDE W. WAITE, S.J.

DATE: 11·21·18

N.B.   It is your responsibility to notify all interested parties of the above action.

17